# 20-3842-CV

## United States Court of Appeals

### *for the*

### Second Circuit

SIDNEY NORMAN WEISS,

*Appellant,*

ALEJANDRO DOMINGO MALVAR EGERIQUE,

*Plaintiff,*

— v. —

EZRA CHOWAIKI, DAVID BENRIMON FINE ART LLC,
LINDA BENRIMON, AKA Linda Rosen, ALEX BENRIMON,
LAUREN BENRIMON, PIEDMONT CAPITAL LLC, AVICHAI ROSEN,
DAVID BENRIMON, JOHN DOES, 1-10,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR APPELLANT

TYLER MAULSBY
FRANKFURT KURNIT KLEIN & SELZ PC
*Attorneys for Appellant*
28 Liberty Street
New York, New York 10005
(212) 980-0120

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF JURISDICTION ......................................................... 6

ISSUES PRESENTED ............................................................................. 7

STATEMENT OF THE CASE ................................................................. 8

STATEMENT OF FACTS ....................................................................... 10

 Mr. Weiss's Background and His Representation of Mr. Malvar ................ 10

 The "Unlawful Debt" Allegations Against the Benrimon Defendants ........ 13

 The July 29 Conference ..................................................................... 16

 The Rule 11 Motion ......................................................................... 19

 The Sanctions Order ........................................................................ 20

 The Settlement, Final Dismissal, and Notice of Appeal ................. 21

SUMMARY OF THE ARGUMENT ....................................................... 22

STANDARD OF REVIEW ..................................................................... 24

ARGUMENT ........................................................................................... 25

I. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT
EXCUSED THE BENRIMON DEFENDANTS' FAILURE TO
COMPLY WITH THE SAFE HARBOR PROVISION IN
RULE 11 .......................................................................................... 25

 A. The Benrimon Defendants' Did Not Comply with the Safe
 Harbor Provision in Rule 11(c)(2) ...................................... 27

B. The District Court Erroneously Concluded That The Safe Harbor Provision Was Unnecessary Because Mr. Weiss Would Not Have Withdrawn The Complaint ..................................................28

C. The District Court's Decision To Excuse Compliance With Rule 11's Safe Harbor Provision Was Fundamentally Unfair To Mr. Weiss Based On The Briefing Schedule Set At The July 29 Conference............................................................................................33

II. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT HELD THAT MR. WEISS VIOLATED RULE 11 ......................................35

A. Mr. Weiss Had A Good Faith Basis To Allege That The Benrimon Defendants Were Engaged In The Business Of Lending Money At A Usurious Rate ..................................................37

B. Mr. Weiss's Allegations Concerning The Shtar Isko Agreement Were Factually Supported ................................................44

CONCLUSION ........................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong Bros. Tool Co. v. United States*,
  489 F. Supp. 269 (Cust. Ct. 1980) ....................................................10

*Arnav Indus., Inc. Employee Retirement Trust v. Westside Realty Assocs.*,
  180 A.D.2d 463 (1st Dep't 1992) ......................................................46

*Artemov v. TransUnion, LLC*,
  20-cv-1892 (BMC), 2020 WL 6146624 (E.D.N.Y. Oct. 20, 2020) ...................38

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  579 F.3d 143 (2d Cir. 2009) ......................................................25, 33

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) .......................................................25, 33

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*,
  447 F. Supp. 2d 329 (S.D.N.Y. 2006) ...............................................26

*Bryant v. Britt*,
  420 F.3d 161 (2d Cir. 2005) ......................................................26, 27

*Castro v. Mitchell*,
  727 F. Supp. 2d 302 (S.D.N.Y. 2010) ...............................................33

*Charles v. Levitt*,
  15 Civ. 9334 Civ. 9334(PAE), 9758 (PAE), 2016 WL 3982514
  (S.D.N.Y. 2016) ....................................................................38

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ..............................................................24, 44

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  No. 02 Civ.2561 (KMW) (GWG), 2003 WL 22227956 (S.D.N.Y.
  Sept. 26, 2003) ....................................................................39

iii

*Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*,
    755 F.2d 239 (2d Cir. 1985) ...................................................................39, 42, 43

*Eastway Constr. Corp. v. City of New York*,
    762 F.2d 243 (2d Cir. 1985) ...................................................................25, 35, 36

*Fishoff v. Coty Inc.*,
    634 F.3d 647 (2d Cir. 2011) ............................................................38, 39, 40, 44

*Gal v. Viacom Int'l, Inc.*,
    403 F. Supp. 2d 294 (S.D.N.Y. 2005) ..............................................................25

*Homkow v. Musika Records, Inc.*,
    No. 04 Civ. 3587(KMW)(THK), 2009 WL 721732 (S.D.N.Y. Mar.
    18, 2009) ....................................................................................................26, 27

*In re Chowaiki & Co. Fine Art Ltd.*,
    No. 17-13228 (S.D.N.Y.)......................................................................12, 13, 15

*In re Venture Mortgage Fund, L.P.*,
    245 B.R. 460 (Bankr. S.D.N.Y. 2000).............................................................46

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2d Cir. 2012) ..............................................................................24

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ..............................................................................38

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010) ..............................................................................24

*Lan v. Time Warner, Inc.*,
    No. 11 Civ. 2870(AT)(JCF), 2015 WL 4469838 (S.D.N.Y. July 13,
    2015) ..........................................................................................................30, 31

*Libaire v. Kaplan*,
    No. Civ.A. 06-1500, 2008 WL 794973 (E.D.N.Y. Mar. 24, 2008)....................26

*Mareno v. Rowe*,
    910 F.2d 1043 (2d Cir. 1990) ..........................................................................36

iv

*Medina v. City of New York*,
No. 19-cv-9412 (AJN), 2020 WL 7028688 (S.D.N.Y. Nov. 30,
2020) ..............................................................................................................38

*Middle States Knowlton Corp. v. Esic Capital, Inc.*,
No. Civ. A. Nos. 82-1911, 82-1912, 82-1913, 82-1926 and 82-
1941, 1985 WL 7441 (D.D.C. Oct. 16, 1985) .............................................41, 42

*O'Callaghan v. Sifre*,
242 F.R.D. 69 (S.D.N.Y. 2007) ..................................................................26

*O'Malley v. New York City Transit Auth.*,
896 F.2d 704 (2d Cir. 1990) ......................................................................38

*Patrick Carter Assocs., Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*,
No. 89 Civ. 7716 (WCC), 1990 WL 195993 (S.D.N.Y. Nov. 28,
1990) ......................................................................................................36, 37

*People v. Valentzis*,
70 N.Y.2d 446 (1987) ................................................................................41

*Perpetual Securities, Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002) ......................................................................29, 30

*Photocircuits Corp. v. Marathon Agents, Inc.*,
162 F.R.D. 449 (E.D.N.Y. 1995) ...............................................................25

*Rojas v. Theobald*,
No. 02-CV-3623 (DRH)(MLO), 2007 WL 2455133 (E.D.N.Y.
Aug. 23, 2007) ..........................................................................................26

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
No. 03-CV-1851 NGG, 2007 WL 1026411 (E.D.N.Y. Mar. 30,
2007) ........................................................................................................38

*Sussman v. Bank of Israel*,
56 F.3d 450 (2d Cir. 1995) ........................................................................36

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F. Supp. 2d 432 (S.D.N.Y. 2004) .......................................................36

*United States v. Chowaiki*,
No. 18 Cr. 323 (S.D.N.Y.) ...............................................................*passim*

*United States v. Grote*,
  961 F.3d 105 (2d Cir. 2020) ...............................................................43

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen*
  *& Helpers of Am., AFL-CIO*,
  948 F.2d 1338 (2d Cir. 1991) ........................................................24, 36

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)...............................................................................10

*Washington International Insurance Co. v. United States*,
  678 F. Supp. 902 (CIT 1988).................................................................10

*Watkins v. Smith*,
  No. 12 Civ. 4635 (DLC), 2013 WL 655085 (S.D.N.Y. Feb. 22,
  2013) ...................................................................................................30, 31

**Statutes**

18 U.S.C. §§ 1961-68.........................................................................*passim*

28 U.S.C. § 1291 .......................................................................................7

28 U.S.C. § 1331 .......................................................................................6

28 U.S.C. § 1332 .......................................................................................6

28 U.S.C. § 1367 .......................................................................................6

N.Y. Penal Law § 190.40........................................................................15

N.Y. Penal Law § 190.42........................................................................41

**Rules**

Fed. R. Civ. P. 5.......................................................................................35

Fed. R. Civ. P. 9.......................................................................................36

Fed. R. Civ. P. 11 ..............................................................................*passim*

Fed. R. Civ. P. 12 .....................................................................................9

## Other Authorities

*Encyclopaedia Judaica*,
   Vol. 18 (2d ed.) (2007) ........................................................................46

*The Oxford Encyclopedia of the Jewish Religion*,
   (2d. ed. 2011) ......................................................................................46

*United States-Canada Free Trade Agreement: Hearing Before the
   Subcomm. on Courts, Civil Liberties, and the Administration of
   Justice of the House Comm. on the Judiciary*, 100th Cong., 2nd
   Sess. 67 (Statement of Sidney N. Weiss) (1988)................................11

Appellant Sidney N. Weiss ("Mr. Weiss" or "Appellant") respectfully submits this brief in support of his appeal of the decision and order dated April 24, 2020 by the Hon. Katherine Polk Failla to the extent that the Order held that Mr. Weiss violated Fed. R. Civ. P. 11, and imposed a $20,000 monetary sanction (the "Sanctions Order").

## PRELIMINARY STATEMENT

Sidney N. Weiss appeals the decision and order of the District Court imposing sanctions against him under Fed. R. Civ. P. 11 ("Rule 11") and ordering him to pay $20,000 in counsel fees. He seeks reversal of the Sanctions Order and return of the $20,000.00. As detailed below, the Sanctions Order was contrary to well-established law in the Second Circuit and rests on erroneous factual conclusions. Specifically, the Sanctions Order did not comply with the procedural requirement in Rule 11(c)(2) that a motion for sanctions be served on Mr. Weiss at least twenty-one days before filing and the District Court abused its discretion when it excused non-compliance with this safe harbor provision. Further, Mr. Weiss advanced significant legal support for the position that the District Court found sanctionable and had a good faith basis for the factual allegations asserted on behalf of his client. His arguments were objectively reasonable and therefore not sanctionable. The Sanctions Order was therefore an abuse of discretion and must be reversed.

Mr. Weiss brought this case on behalf of his client Alejandro Domingo Malvar Egerique ("Mr. Malvar"), in an effort to recover two valuable pieces of artwork that were stolen from Mr. Malvar by defendant Ezra Chowaiki ("Chowaiki"). The two works[1] were originally on consignment to Chowaiki's art gallery in New York, Chowaiki & Co. Fine Art. Ltd. After the consignment expired, Mr. Malvar demanded return of his Works of Art, but Mr. Chowaiki never returned them. Instead, he unlawfully sold one piece of artwork to an unknown purchaser in Europe and kept all the proceeds for himself. Shortly before his arrest and his gallery's bankruptcy, Defendant Piedmont Capital LLC ("Piedmont") lent Mr. Chowaiki's Gallery $300,000 at the criminally usurious interest rate of 202.818%, and took the Picasso, and two other works of art (not owned by Mr. Malvar), as collateral. The $300,000 loan was negotiated by defendants David Benrimon Fine Art LLC, and David and Linda Benrimon, not Piedmont or its principal, Avichai Rosen.[2] When the Gallery was unable to pay the loan, the

---

[1] The two works are Pablo Picasso's *le Gueridon* (the "Picasso") and a work by Fernand Léger titled *Composition avec Profil de Femme* (together, the "Works of Art"). (A-123, ¶ 4.)

[2] Piedmont, together with David Benrimon Fine Art LLC, David Benrimon, Linda Benrimon, and Avichai Rosen are referred to collectively as the "Benrimon Defendants."

Picasso was delivered to the Benrimon Defendants and then transported to Europe where it was put on sale for approximately $440,000. (A-144 ¶ 70.)

In his First Amended Complaint (the "Complaint" (A-122-A-167)), Mr. Malvar alleged, *inter alia*, that Chowaiki (through his gallery,) and the Benrimon Defendants unlawfully and fraudulently converted pieces of valuable artwork belonging to Mr. Malvar. The Complaint included claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961, *et seq*. as well as related state law causes of action for conversion, replevin, and fraud. The Complaint alleged that the defendants conducted or participated in various RICO enterprises through patterns of racketeering activity, and collection of an unlawful debt.

All defendants filed motions to dismiss the Complaint. The Benrimon Defendants also moved for sanctions under Rule 11, claiming that all of Mr. Malvar's claims were frivolous. With respect to the unlawful debt claims, no party disputed that the rate of interest for the loan from Piedmont to Chowaiki was usurious. Instead, the Benrimon Defendants argued that Mr. Malvar failed to allege that they were "in the business of lending money" at a usurious rate, which RICO requires. As detailed below, Mr. Weiss provided ample support for the argument that the Benrimon Defendants were engaged in the business of lending

money at usurious rates and that Mr. Malvar was not required to plead multiple usurious transactions in order for his claim to survive.

The District Court dismissed all of Mr. Malvar's RICO claims but declined to dismiss Mr. Malvar's state law claims for conversion and replevin. The District Court also largely denied the Benrimon Defendants' motion for sanctions but found that the RICO unlawful debt claims were sanctionable.

As set forth below, the Sanctions Order must be reversed for several reasons.

*First*, there is no dispute that the Benrimon Defendants did not comply with the safe harbor provision in Rule 11(c)(2), which requires a party seeking sanctions to serve its motion at least twenty-one days before filing. Here, the Benrimon Defendants e-mailed Mr. Weiss a copy of their sanctions motion two days before filing. The sanctions motion did not adequately describe the Benrimon Defendants' reasons for seeking sanctions and instead relied heavily on arguments made in a brief that was not included with the motion. The District Court's decision to excuse the Benrimon Defendants' compliance with the safe harbor provision of Rule 11 under these circumstances was wrong as a matter of law, and an abuse of discretion.

*Second*, Mr. Weiss's claim that the usurious loan between the Benrimon Defendants and Chowaiki was incurred in connection with the business of lending money was not objectively unreasonable as the law on sanctions requires. Mr.

Weiss provided ample support for this claim. The allegations in the Complaint detailed the numerous acts by the Benrimon Defendants in furtherance of the business of making a usurious loan. Mr. Weiss also provided extensive legal support for the position that even a single usurious transaction could form the basis for a RICO violation based on the collection of an unlawful debt, including the text and legislative history of RICO, an analysis of the cases from this Circuit, and additional cases from other courts which have interpreted the meaning of the business of making usurious loans. Moreover, Mr. Weiss alleged in the Complaint that the transaction between Piedmont and Chowaiki was not the only usurious transaction or instance of engaging in the business of lending money or a thing of value at a rate usurious under state or federal law. The law is clear that where a lawyer provides this level of support for his claims, as was provided here, sanctions are inappropriate.

*Third*, Mr. Weiss did not make any factually false statements in the Complaint. The Complaint alleged that the Benrimon Defendants intentionally concealed a document from the court in Chowaiki's criminal case, called a "Shtar Isko," which set out the terms of a 50%-50% partnership in a venture related to the $300,000 loan. The District Court concluded that because the promissory Note the Benrimon Defendants filed in the criminal case described the $300,000 loan and stated that the repayment of the principal and interest was "in accordance with

Heter Iska," Mr. Weiss's statement about the Shtar Isko was false.  However the language in the Note that the Benrimon Defendants filed and the details of the written Shtar Isko agreement are markedly different.  As a result, the Court erroneously concluded that Mr. Weiss's allegation in the complaint was "factually unsupported" and therefore frivolous.

The order of the District Court imposing sanctions against Mr. Weiss should therefore be reversed.

## STATEMENT OF JURISDICTION

This action was originally brought under the Racketeer Influenced and Corrupt Organizations (RICO) Act.  18 U.S.C. §§ 1961-68.  The District Court had jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  The District Court also had jurisdiction under 28 U.S.C. § 1332(a)(2) because Mr. Malvar is a citizen of the Kingdom of Spain (and not a permanent resident of the United States), the Defendants are citizens of the United States, and the amount in controversy exceeded $75,000.

In its April 24, 2020 order, the Court dismissed Mr. Malvar's RICO and conspiracy claims, but retained jurisdiction over Mr. Malvar's State law claims for conversion and replevin of the Works of Art.  (A-563-A-649.)  By stipulation and order, on October 13 2020, the Benrimon Defendants returned the Picasso to Mr.

Malvar, at no cost to Mr. Malvar, and the case with respect to the Benrimon Defendants was dismissed.  (SPA-3-4.)  On October 16, 2020, a stipulation and order dismissed all claims against the remaining defendants.  (SPA-5-6.)  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether the District Court abused its discretion when it imposed sanctions pursuant to Fed. R. Civ. P. 11 even though the Benrimon Defendants did not comply with the "safe harbor" provision in Fed. R. Civ. P. 11(c)(2), and instead sent Mr. Weiss a copy of their brief in support of sanctions two days before the filing deadline set by the District Court.

2.      Whether the District Court abused its discretion when it imposed sanctions pursuant to Fed. R. Civ. P. 11 based on Mr. Weiss's claim in the complaint that the Benrimon Defendants were "in the business" of lending money or a thing of value at a usurious rate for purposes of 18 U.S.C. § 1961(6), where Mr. Weiss provided both legal and factual support for his position including an analysis of:  (i) the text and legislative history of 18 U.S.C. § 1961(6); (ii) existing caselaw; and (iii) an analysis of other statutes relevant to the interpretation of the definition of being "in the business" of lending money at usurious rates.

3.      Whether the District Court abused its discretion when it found that Mr. Weiss's allegation that the Benrimon Defendants concealed from the court in

Chowaiki's criminal case the Shtar Isko agreement between Chowaiki and Piedmont was "factually inaccurate," even though the Benrimon Defendants did not present the Shtar Isko to the court in that case and the document presented to the court in Chowaiki's criminal case did not contain the same terms as the Shtar Isko and carried different legal significance.

## STATEMENT OF THE CASE

Sidney N. Weiss appeals from an order dated April 24, 2020, by the Honorable Katherine Polk Failla of the United States District Court for the Southern District of New York, which held, *inter alia*, that Mr. Weiss violated Fed. R. Civ. P. 11 and imposed sanctions of $20,000, which Mr. Weiss timely paid under protest. (A-563-A-649; A-650-A-655.)

On April 8, 2019, Mr. Weiss filed an action on behalf of his client, Mr. Malvar, alleging that the defendants violated RICO (18 U.S.C. §§ 1961 *et seq.*) and related state law claims, including fraud, conversion and replevin. (A-12-A-70.) Mr. Malvar alleged that by these RICO and state law violations, Mr. Chowaiki and the Benrimon Defendants deprived Mr. Malvar of two valuable pieces of artwork. (*Id.*)

After a pre-motion conference, Mr. Weiss filed a First Amended Complaint[3] on September 6, 2019.  (A-122-A-167.)  Pursuant to the order entered at the pre-motion conference, the court ordered that the defendants file their responsive papers to the amended complaint, and any sanctions motion, by October 18, 2020.  (A-227: 18.)  On October 16, 2019, at 10:57 p.m., two days before the filing deadline, the Benrimon Defendants e-mailed Mr. Weiss a copy of their memorandum of law in support of their motion for sanctions under Rule 11.  (A-499.)  But the memorandum referred to and relied upon arguments in a motion to dismiss, which was not sent to Mr. Weiss.  Thus, Mr. Weiss was not given the twenty-one day safe harbor period required by Rule 11(c)(2).  On October 18, 2019, the Benrimon Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and also sought sanctions.  (A-234-337.)

On April 24, 2020, the District Court entered the Sanctions Order, which dismissed Plaintiff's RICO claims, but denied the motions to dismiss the claims for conversion and replevin.  The Sanctions Order also granted in part and denied in part the Benrimon Defendants' motion for sanctions and ordered Mr. Weiss to pay $20,000 to the Benrimon Defendants on or before May 22, 2020.  (A-563-A-649.)

---

[3] Unless otherwise indicated, the original Complaint (A-12-A-70) and the First Amended Complaint (A-122-A-167) will be defined as the "Complaint."  Specific paragraph citations will be to the First Amended Complaint.

Mr. Weiss timely complied, under protest, with the Sanctions Order and paid the Benrimon defendants the $20,000, while reserving the right to appeal the sanction and recoup the amount paid. (A-650-A-655.)

After the Sanctions Order, Mr. Weiss negotiated a settlement agreement, under which the Benrimon Defendants returned the Picasso to Mr. Malvar, at no cost to him, and between October 13 and 16, 2020, the court entered a series of stipulations and orders dismissing the case. (SPA-1-SPA-6.) On November 10, 2020, Mr. Weiss filed a timely notice of appeal of the Sanctions Order, solely as it related to sanctions against him. (A-656-A-658.)

## STATEMENT OF FACTS

**Mr. Weiss's Background and His Representation of Mr. Malvar**

Sidney N. Weiss is a distinguished attorney and litigator specializing in international trade. He was admitted to practice in New York in 1975, and to the Southern District of New York in 1976. He has appeared as attorney of record in multiple reported cases and his work has been complimented by federal judges.[4] He has also testified before Congress several times regarding international trade agreements, with particular emphasis on the importance and requirement of

---

[4] *See, e.g., Armstrong Bros. Tool Co. v. United States*, 489 F. Supp. 269 at 281 (Cust. Ct. 1980); *Washington International Insurance Co. v. United States*, 678 F. Supp. 902 at 906 (CIT 1988). *See also United States v. Mead Corp*., 533 U.S. 218, at n. 4, and 232 (2001) (relying on brief filed by Mr. Weiss as president of the Customs and International Trade Bar Association).

retaining review of those agreements in Article III courts.[5]  In his 45 year career,

he has never before been the subject of sanctions nor has his conduct been called

into question by any court or tribunal.

In this case, Mr. Weiss represented Mr. Malvar, a Spanish national, who was

seeking to recover the Picasso and the Léger that were stolen from him.  There was

no dispute in the District Court that Malvar was the rightful owner of the Works of

Art.  (A-563; SPA-3.)  Instead, the case centered on whether Chowaiki and the

Benrimon Defendants converted or otherwise unlawfully obtained the Works of

Art from Mr. Malvar.

Mr. Malvar purchased these two Works of Art from Sotheby's in London, at

auction in 2007.  (A-123, ¶ 4.)  In 2015, he entered into a three month consignment

agreement with Chowaiki's gallery for the Works of Art.  (A-132, ¶ 34-37.)  In

furtherance of that agreement, the Works of Art were shipped from Europe to

Chowaiki's gallery in Manhattan.  (*Id.*)  Instead of honoring the consignment

agreement, Chowaiki stole the Works of Art as part of an ongoing fraudulent

scheme.  (A-132, ¶ 37.)  Mr. Malvar repeatedly demanded the return of his Works

---

[5] *See, e.g., United States-Canada Free Trade Agreement: Hearing Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary*, 100th Cong., 2nd Sess. 67 (Statement of Sidney N. Weiss), at 216 (1988).

of Art after the consignment period ended and, although Chowaiki repeatedly promised to return the Works of Art, he never did. (*Id.*)

Mr. Malvar later learned that Chowaiki's theft was part of a larger criminal scheme, for which Chowaiki was eventually arrested and convicted in the U.S. District Court for the Southern District of New York. *See United States v. Chowaiki*, No. 18 Cr. 323 (S.D.N.Y.) (the "Criminal Case"). As alleged in the Complaint, Chowaiki's scheme was, in part, as follows: Chowaiki would obtain valuable pieces of artwork from his customers' by promising to sell the artworks on consignment. (A-129-A-140.) However, upon receiving the artwork, Chowaiki would illegally use those works of art as collateral for loans in order to finance his gallery's operation. *Id.*

In May 2018, Chowaiki plead guilty in the Criminal Case to one count of wire fraud and was sentenced to eighteen months in prison. *See United States v. Ezra Chowaiki*, No. 18 Cr. 323 (S.D.N.Y.). The Criminal Case included a forfeiture proceeding, in which multiple parties, including the Benrimon Defendants and Mr. Malvar, made claims to recover certain pieces of artwork. Chowaiki's gallery also filed a petition for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. *See In re Chowaiki & Co. Fine Art Ltd.*, No. 17-13228 (S.D.N.Y.) (the "Bankruptcy Case").

After Mr. Weiss began representing Mr. Malvar, he conducted extensive investigations into the facts surrounding the misappropriation of the Works of Art, including reviewing the numerous other matters involving Chowaiki and the Benrimon Defendants, communicating with counsel in those matters, conducting discovery in the Bankruptcy Case, and reviewing court records. (A-495, ¶ 2.) Mr. Weiss also conducted in-depth legal research into RICO claims. *Id.* In addition to reviewing the legislative history, caselaw and relevant treatises, Mr. Weiss consulted with experts on RICO and its application. (*Id.*)

**The "Unlawful Debt" Allegations Against the Benrimon Defendants**

The Complaint alleged that in or around September 2017, Chowaiki, who was facing imminent criminal prosecution, and whose gallery was facing bankruptcy, entered into a transaction with the Benrimon Defendants to sell three pieces of artwork, including the Picasso. (A-134, ¶ 45.)

The Complaint alleged that instead of an arms-length sale between Chowaiki and the Benrimon Defendants, the parties agreed that Piedmont (one of the Benrimon Defendants) would "lend" Chowaiki $300,000 and that three pieces of artwork (including the Picasso) would be used as collateral for the purported loan (the "Piedmont Loan"). *Id.* ¶ 44. According to the "Note" that was part of the Piedmont Loan, Piedmont agreed to loan Chowaiki's Gallery $300,000, to be repaid in 30 days together with $50,000 in interest. (A-135-A-136, ¶¶ 47-48.)

Based on the terms contained in the Note, the annual uncompounded interest for the purported loan was 202.818%. (*Id.*)

Not surprisingly, Chowaiki defaulted on the Piedmont Loan 30 days later. (A-138-A-139, ¶¶ 54-55.) But in the meantime, Chowaiki delivered the Picasso to David Benrimon Fine Arts LLC on October 4, 2017, at the request of the Benrimon Defendants. (A-141, ¶ 62.) Subsequently, the Benrimon Defendants sent the Picasso to Europe where it was placed on sale for approximately $441,000. (A-142-A-144, ¶¶ 67-70.)

Piedmont and Mr. Chowaiki also executed a document, called a "Shtar Isko Agreement" (the "Shtar Isko") under which Chowaiki and Piedmont became equal partners in furtherance of the loan transaction. (A-136, ¶ 48.) The Complaint further alleged that although Piedmont was the lender in the transaction, both David and Linda Benrimon negotiated the Piedmont Loan, and the loan was listed on the books of Chowaiki's gallery as a loan from David Benrimon. (*Id.* ¶ 50.)

The Complaint alleged that the Piedmont Loan was a subterfuge to allow Chowaiki to unload the Works of Art before he was arrested and that the Benrimon Defendants knew or should have known that Chowaiki was selling artwork that he had no right to sell.[6] (A-138, ¶ 55.)

---

[6] In support of these allegations, the Complaint alleged, *inter alia*, that the Benrimon Defendants purchased other pieces of artwork from Chowaiki which

The Complaint alleged that the Piedmont Loan was the basis of a RICO claim for collection of unlawful debt because the 202.818% interest rate was more than eight times the rate of criminal usury under New York law (N.Y. Pen. L. § 190.40) and because it was incurred in connection with the business of lending money or a thing of value at a rate that is usurious under New York law. (A-147, ¶ 84.) The Complaint alleged that Piedmont and Mr. Rosen were engaged in the business of lending money or a thing of value at usury, and that this business involved significant activity over a substantial period of time and constituted a substantial portion of the activities of both Piedmont and Mr. Rosen. (A-147-A-150, ¶¶ 84-89.) The allegations in the Complaint were based on many factors including: (i) the negotiations leading up to a $300,000 loan; (ii) raising $300,000 in capital for the loan; (iii) drafting and executing the four documents and contracts for the Piedmont Loan; (iv) entering into an agreement to form an equal partnership in furtherance of the Piedmont Loan; (v) collecting the $300,000.00 debt over a period of two years; (vi) attempting to sell and otherwise dispose of the collateral for the loan; (vii) re-negotiating the debt, including making a separate claim in the Bankruptcy Case that the Trustee and Estate pay 200% interest on $500,00 which Piedmont claimed was the value of the two other works of art taken

they then re-sold even though the Benrimon Defendants knew that Chowaiki was not the rightful owner of those artworks. (A-134, ¶ 43.)

as collateral for the Piedmont Loan; (viii) taking other steps to collect the debt; and (ix) Piedmont holding itself out as being in the business of lending money and investing in art.[7]  (A-148-A-149, ¶¶ 86-87; A-124-A-125, ¶ 10.)  Mr. Malvar also alleged that the Benrimon Defendants were involved in another usurious transaction when they made a separate claim on the Bankruptcy Trustee for $500,000.00 plus 200% interest, based on their claim for the two artworks taken as collateral as part of the Piedmont Loan.  (A-148, ¶ 86.)  Mr. Malvar further alleged, upon information and belief, that  Piedmont and Mr. Rosen were engaged in the business of lending money or a thing of value to others, at usurious rates.  (A-150, ¶ 89).

**The July 29 Conference**

On July 29, 2019, the court held a pre-motion conference (the "July 29 Conference"), in connection with the Benrimon Defendants' anticipated motions to dismiss and for sanctions.  (A-97-A-121.)  At the conference, Mr. Weiss informed the court that he intended to amend the complaint to include additional allegations to further substantiate Malvar's claim that the Piedmont Loan was incurred in

---

[7] The Complaint alleged that Piedmont held itself out as "a boutique investment manager specializing in strategic investments in alternative asset classes.  A significant portion of Piedmont's business consists of making loans secured by works of art.  Through this business, Piedmont provides necessary liquidity to art dealers, collectors, and other participants in the art market."  (A-124-A-125, ¶ 10.)

connection with the business of lending money or a thing of value at a rate usurious under State or Federal law.  (A-181.)  The District Court asked Mr. Weiss to explain his basis for the allegation that the Benrimon Defendants were "in the business of lending money" at a usurious rate based on the Piedmont Loan.  (*Id.*)  In response, Mr. Weiss cited to the text and legislative history of RICO, other federal statutes that he argued were relevant to the interpretation of RICO, New York law on the issue of criminal usury, and cases which Mr. Weiss argued supported his position.  (A-181-A-183.)  Based on that authority, Mr. Weiss argued:  "So there is no requirement that there be more than one usurious loan. There's a requirement that you be in the business of making a usurious loan, and that's what happened here."  (A-183: 10-11.)  The District Court did not question Mr. Weiss' argument or challenge any of the authorities he mentioned.  (A-183: 22-23.)

The court set a briefing schedule for the Benrimon Defendants' motions to dismiss and for sanctions.  (A-227-A-232.)  The parties agreed that Mr. Weiss would file an amended complaint by September 6, 2020.  (A-227: 18.)  Counsel for the Benrimon Defendants and the court then engaged in the following colloquy with respect to the timing of both motions:

> THE COURT: How much time do you need? Thirty days or thereabouts?
>
> MR. NIKAS: Three weeks is fine.

THE COURT: I want you, as you can imagine, to think long and hard before bringing a sanctions motion.

But if you're bringing it, you're bringing it with the motion to dismiss?

MR. NIKAS: *I think, your Honor, I need to serve him with the motion*.

THE COURT: Exactly.

MR. NIKAS: If he plans to review the motion to decide what he's doing. I think that allows for the calendar that we need.

THE COURT: Exactly. I would prefer a single, unitary brief that would have both the motion to dismiss and the motion for sanctions.

MR. NIKAS: Okay.

THE COURT: *So if you want the additional time because I suspect that within a week or so of the 6th of September you'll be filing your motion, your papers, your notice to him.*

MR. NIKAS: *Yes*.

THE COURT: So can we go a little bit further. Can we go to October 18?

*Does that give you enough time to do what you need to do*?

MR. NIKAS: *It does, your honor.*

(A-228:2-A-229:2) (emphasis added). In other words, the briefing schedule that the district court set, specifically contemplated that the Benrimon Defendants would serve their Rule 11 motion twenty-one days before the filing deadline, as required by Rule 11(c)(2), and that the two motions would be filed and served together. However, as detailed below, the Benrimon Defendants did not comply with the safe harbor rule.

**The Rule 11 Motion**

On October 16, 2019, two days before the filing deadline, counsel for the Benrimon Defendants sent an e-mail to Mr. Weiss at 10:57 p.m., which attached the Benrimon Defendants' memorandum of law in support of their motion for sanctions (the "Rule 11 Motion"). (A-499.) The e-mail further asked Mr. Weiss to "please confirm that you will not withdraw the First Amended Complaint . . . so that we can file our Rule 11 motion on October 18 along with our motion to dismiss." (*Id.*) The memorandum attached to the October 16 e-mail relied heavily on the Benrimon Defendants' brief in support of their motion to dismiss, which they had not yet filed, and which was not included in the e-mail to Mr. Weiss. (*See, e.g.*, A-312 (arguing that the claims against the Benrimon Defendants "are defective in virtually every respect, as explained in the Benrimon Defendants' memorandum of law in support of their motion to dismiss" and repeatedly citing to the Benrimon Defendants' motion to dismiss.)) The October 16 e-mail also did not include any declarations or supporting exhibits, which were ultimately filed with the Benrimon Defendants' Rule 11 motion. (*See* A-499.)

The following day, Mr. Weiss responded to the e-mail from the Benrimon Defendants' counsel and stated that "[b]ased on the Rule 11 motion, *which explicitly relies upon the motion to dismiss (which you have not sent me)*, we are not withdrawing the first amended complaint or case." (*Id.*) (emphasis added.) In

other words, the Benrimon Defendants demanded an answer from Mr. Weiss even though he did not have a full opportunity to consider all of the Benrimon Defendants' grounds for sanctions.

On October 21, 2019[8] the Benrimon Defendants filed their Rule 11 Motion as well as their motion to dismiss.  Although both the Benrimon Defendants and Malvar requested it, the court did not hold oral argument on the motions.

**The Sanctions Order**

On April 24, 2020, the District Court issued an Opinion and Order, which granted in part and denied in part the Benrimon Defendants' and Chowaiki's motion to dismiss the Complaint and granted in part and denied in part the Benrimon Defendants' motion for sanctions.  (*See* A-563-A-649.)  The District Court dismissed, *inter alia*, all of Mr. Malvar's RICO claims, but declined to dismiss several of Mr. Malvar's state law claims against Chowaiki and the Benrimon Defendants.  (*Id.*)  With respect to sanctions, the District Court denied the Benrimon Defendants' request for sanctions with respect to the state law claims and the vast majority of the allegations relating to Malvar's RICO claims.  (*Id.*)

---

[8] Although the briefing schedule required the Benrimon Defendants to file their motions by October 18, 2019, they were apparently unable to e-file their motions until the 21st owing to a technical issue with the court's e-filing system.  (A-331-A-332.)  Based on the Sanctions Order, the motions appear to be deemed filed on October 18.  (A-577-A-578.)

However, the court held that Mr. Weiss' position that the Piedmont Loan was incurred in connection with the business of lending money or a thing of value at a rate usurious under State or Federal law was sanctionable. (A-639-A-640.)

In granting sanctions on the collection of unlawful debt claims, the court said it also took into consideration Mr. Malvar's claim that the Benrimon Defendants concealed the Shtar Isko Agreement – which stated that Piedmont and Mr. Chowaiki were actually 50%-50% partners – because the Benrimon defendants did disclose a "Note" between Piedmont and Chowaiki's gallery which said that the Piedmont Loan was made "in accordance with Heter Iska." (A-640-A-641.) The District Court erroneously concluded that the written Shtar Isko agreement, and its contents, was identical to Heter Iska and therefore the allegation in the complaint was "factually inaccurate" and "reckless." (*Id.*)

The District Court concluded that a sanction of $20,000 would "fairly vindicate[] the purposes of Rule 11" and ordered Mr. Weiss to pay the Benrimon Defendants' attorneys' fees in that amount. (A-644.) Mr. Weiss timely paid the sanction to the Benrimon Defendants under protest, reserving his rights to appeal, and to seek the return of the sanctions amount plus interest. (A-650-A-655.)

**The Settlement, Final Dismissal, and Notice of Appeal**

On October 13, 2020, the District Court "so ordered" a Stipulation And Order Of Dismissal between Malvar and the Benrimon Defendants as well as a

stipulation dismissing the "John Doe" defendants from the action. (SPA-1-SPA-4.) The Benrimon Defendants acknowledged Malvar's "full right, title, possession, and ownership" of the Picasso and that "the Benrimon Defendants *have[] delivered Picasso's le Gueridon to plaintiff . . . at no charge or cost to plaintiff."* (SPA-3) (emphasis added.) Thus, notwithstanding the Sanctions Order, Mr. Weiss successfully secured the return of the Picasso for his client and the Benrimon Defendants' cooperation to facilitate its return.

On October 16, 2020, the District Court "so ordered" the Stipulation and Order Of Dismissal between Malvar and Chowaiki, which disposed of the only remaining claims after the settlement between Malvar and the Benrimon Defendants. (SPA-5-SPA-6.) On November 10, 2020, Mr. Weiss field a Notice of Appeal solely as it pertains to the Sanctions Order. (A-656-658.) This appeal timely follows.

## **SUMMARY OF THE ARGUMENT**

*First*, the District Court abused its discretion, and erred as a matter of law, when it excused the Benrimon Defendants failure to comply with the safe harbor provision in Rule 11(c)(2). The Benrimon Defendants did not send Mr. Weiss their Rule 11 Motion until two days before the filing deadline, and did not include their arguments in support of dismissal, on which the Rule 11 Motion heavily relied. Failure to comply with Rule 11's safe harbor provision required denial of

22

the Rule 11 Motion and the District Court's decision to excuse the Benrimon Defendants' non-compliance with the safe harbor provision was an abuse of discretion.

*Second*, the District Court abused its discretion when it held that Mr. Weiss violated Rule 11 when he alleged that the Benrimon Defendants were in the business of lending money at usurious rates based on a single transaction between Piedmont and Chowaiki. Specifically, the District Court erroneously concluded that Mr. Weiss's argument was "objectively unreasonable" even though Mr. Weiss cited in support of his argument: (i) the text and legislative history of RICO; (ii) an analysis of other relevant statutes discussing the meaning of "the business of lending money" at usurious rates; (iii) cases in support of his argument; and (iv) an analysis of the cases that were contrary to his position.

*Third,* the District Court abused its discretion when it concluded that Mr. Weiss's allegation that the Benrimon Defendants failed to disclose the Shtar Isko to the court in the Criminal Case was "factually inaccurate" and sanctionable. The Benrimon Defendants did not provide the court in the Criminal Case with a copy of the Shtar Isko or any other document that would have detailed the business arrangement between Piedmont and Chowaiki, where they agreed to become equal partners. Instead, the District Court erroneously concluded that the statement "in accordance with Heter Iska" in the Note between Piedmont and Chowaiki's gallery

was identical to the written Shtar Isko Agreement between Chowaiki and Piedmont. There is a significant difference between a reference to the concept of "Heter Iska" and a written Shtar Isko agreement. Thus, the District Court's reliance on these allegations as the basis for sanctions was clearly erroneous and an abuse of discretion.

## STANDARD OF REVIEW

This Court reviews an order imposing Rule 11 sanctions for abuse of discretion. *See Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

Courts must carefully scrutinize Rule 11 motions to determine whether the movant complied with the procedural requirements of the rule and, if so, whether the respondent engaged in conduct that was objectively unreasonable. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991).

Further, "Sanctions may be—but need not be—imposed when . . . claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). A district court should not impose sanctions "to chill creativity or

stife enthusiasm or advocacy." *Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 451 (E.D.N.Y. 1995) (citing *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 322 (2d Cir. 1990)).  "Courts must strive to avoid the wisdom of hindsight . . . and any and all doubts must be resolved in favor of the signer." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).

## ARGUMENT

## I.

### THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT EXCUSED THE BENRIMON DEFENDANTS' FAILURE TO COMPLY WITH THE SAFE HARBOR PROVISION IN RULE 11

Rule 11 requires that a motion for sanctions be made separately from any other motion and that the motion must be served but not filed if the challenged pleading or other paper is withdrawn "within 21 days after service or within another time the court sets."  Rule 11(c)(2); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) ("When the sanctions process is initiated by a motion from an opposing party (under Rule 11(c)(2)), the challenged lawyer has a 21–day 'safe harbor' to withdraw or amend").  A district court evaluating a motion for Rule 11 sanctions "must adhere to the procedural rules which safeguard due process rights."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000); *see also Gal v. Viacom Int'l, Inc.*, 403 F.

Supp. 2d 294, 309 (S.D.N.Y. 2005) (Rule 11 "states explicitly that service of the motion itself is required to begin the safe harbor clock").

A motion that fails to comply with the safe harbor provision of Rule 11 must be denied. *See, e.g., Bryant v. Britt*, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (upholding denial of sanctions where movant "failed to comply with Rule 11(c)[(2)]"); *Homkow v. Musika Records, Inc.*, No. 04 Civ. 3587(KMW)(THK), 2009 WL 721732, at *20 (S.D.N.Y. Mar. 18, 2009) ("If a party seeking Rule 11 sanctions fails to comply with the safe-harbor provision ... the motion must be denied"); *Libaire v. Kaplan*, No. Civ.A. 06-1500, 2008 WL 794973, at *15 (E.D.N.Y. Mar. 24, 2008) (Sanctions denied where plaintiffs "fail[ed] to comply with the safe harbor provision embodied in Rule 11(c)" despite substantive violations of Rule 11); *Rojas v. Theobald*, No. 02-CV-3623 (DRH)(MLO), 2007 WL 2455133, at *9–10 & n.8 (E.D.N.Y. Aug. 23, 2007), *aff'd,* 319 Fed.Appx. 43 (2d Cir. 2009) (denying motion for sanctions for failure to comply with safe harbor provision); *O'Callaghan v. Sifre*, 242 F.R.D. 69, 75–76 (S.D.N.Y. 2007) (same); *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 341 (S.D.N.Y. 2006) (same).

Here, the District Court's decision to excuse the Benrimon Defendants' failure to comply with Rule 11(c)(2) constituted an abuse of discretion for three reasons. *First*, the Benrimon Defendants clearly did not comply with the safe

harbor provision in Rule 11(c)(2). They e-mailed Mr. Weiss their memorandum in support of the sanctions motion two days before the filing deadline. The sanctions motion extensively relied upon the Benrimon Defendants' memorandum in support of dismissal, and other papers, which they did not send to Mr. Weiss. *Second*, the District Court erroneously concluded, based on an e-mail from Mr. Weiss to opposing counsel, and based on his decision to oppose the Rule 11 Motion and the Benrimon Defendants' motion to dismiss, that Mr. Weiss would not have withdrawn the Complaint during the safe harbor period even if he had received all the papers and had the mandated twenty-one days in which to review them. This conclusion is contrary to the law on Rule 11 sanctions and must be reversed. *Third*, the District Court's decision to excuse compliance with the safe harbor provision was fundamentally unfair in light of the briefing schedule that the court set at the July 29 Conference.

**A. The Benrimon Defendants' Did Not Comply with the Safe Harbor Provision in Rule 11(c)(2)**

Rule 11(c)(2) makes clear that a party must serve the other party with a motion for sanctions at least twenty-one days before filing the motion. A Rule 11 motion must also describe the specific conduct that violates Rule 11. A motion that does not comply with the safe harbor requirements of Rule 11 must be denied. *Bryant*, 420 F.3d at 163 n.2; *Homkow*, 2009 WL 721732, at *20.

Here, the Benrimon Defendants clearly did not follow Rule 11(c)(2). Instead, the Benrimon Defendants e-mailed Mr. Weiss a copy of their Rule 11 memorandum at 10:57 p.m. on October 16, 2019 and then filed their Rule 11 Motion two days later. The Benrimon Defendants also did not provide Mr. Weiss with a copy of their motion to dismiss on October 16, even though the Rule 11 Motion relies extensively on arguments made in the motion to dismiss. Accordingly, the Rule 11 Motion should have been denied on this basis alone.

**B.     The District Court Erroneously Concluded That The Safe Harbor Provision Was Unnecessary Because Mr. Weiss Would Not Have Withdrawn The Complaint**

The Sanctions Order concluded that because the court was "certain that Plaintiff would not have withdrawn or amended the Complaint, even if he had been provided the full 21 days . . . [a]ny technical violation of the safe harbor provision is therefore excused." (A-637.) The District Court based its conclusion on (i) Mr. Weiss's e-mail response to opposing counsel the day after he received the Rule 11 Motion (*i.e.* one day after he received it and one day before the Benrimon Defendants filed) and (ii) the fact that after the Benrimon Defendants filed the Rule 11 Motion, Mr. Weiss continued to "stand[] by" the allegations at issue in the Sanctions Order. (*Id.*) The District Court's holding was contrary to clearly established law and was therefore an abuse of discretion.

The Sanctions Order relied heavily on *Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002) to justify excusing the Benrimon Defendants' clear violation of the safe harbor provision in Rule 11(c)(2). In *Perpetual Securities*, this Court reversed a lower court order imposing sanctions under Rule 11, where the movant failed to comply with Rule 11's safe harbor requirement. *Id.* at 142 ("The district court's awarding of sanctions against Perpetual in contravention of the explicit procedural requirements of Rule 11 was thus an abuse of discretion"). This Court remanded the case for the lower court to consider whether the sanctioned party "would have corrected or amended its frivolous arguments" if afforded the benefit of the safe harbor period. *Id.* Although under *Perpetual Securities* a court can exercise its discretion to excuse technical non-compliance with Rule 11(c)(2), that case did not create a wholesale exception to the rule, which requires strict compliance in order to safeguard the due process protections afforded to the respondent. *See* Rule 11, 1993 Amendment ("To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion"). Instead, a court must assess whether the recipient of a Rule 11 motion had sufficient time to consider his options before deciding whether to withdraw or amend the allegedly frivolous

pleading and, if so, then a court may excuse strict compliance with the safe harbor provision if the movant did not technically comply.

Here, the Sanctions Order used *Perpetual Securities*, to excuse the Benrimon Defendants' failure to follow Rule 11(c)(2). (*See* A-636) (quoting *Perpetual Securities*, 290 F.3d at 142.) The District Court's decision goes well beyond what this Court intended to permit. Accepting the District Court's reasoning, a movant could wait until the eleventh hour to serve a Rule 11 motion, but would still be able to prevail so long as the movant could demonstrate that the respondent would not have withdrawn the allegedly frivolous pleading if given the opportunity to do so during the safe harbor period. Such a holding runs contrary to the plain language of Rule 11(c)(2).

The other cases cited in the Sanctions Order – *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at *6 (S.D.N.Y. Feb. 22, 2013) and *Lan v. Time Warner, Inc*., No. 11 Civ. 2870(AT)(JCF), 2015 WL 4469838, at *1-2 (S.D.N.Y. July 13, 2015) are also easily distinguishable. Both cases involved highly technical failures to comply with the safe harbor provision and, in both cases, the recipients of the Rule 11 motions had a reasonable time to consider the merits of the movants' arguments. For instance, in *Watkins*, the defendants filed their motion for sanctions approximately *an hour-and-a-half* before the safe harbor period expired. *See Watkins*, 2013 WL 655085, at *7. Relying on *Perpetual*

*Securities*, the court excused the defendant's premature filing, reasoning, "[i]t is clear that the plaintiff would not have withdrawn or corrected his frivolous allegations if he had been given *the benefit of a few more hours*." *Id*. (emphasis added). Similarly, in *Lan*, the defendant filed a Rule 11 motion three days before the expiration of the safe harbor period. *See* 2015 WL 4469838, at *2. Although the court signaled that the safe harbor provision would not have impeded the imposition of sanctions since the plaintiff did not give "any indication that the challenged submission would have been withdrawn had the safe harbor provision been strictly followed," the court ultimately denied the Rule 11 motion without prejudice. *Id*.

Unlike *Watkins* and *Lan*, the Benrimon Defendants waited until two days before the filing deadline to send Mr. Weiss their Rule 11 Motion. Moreover, the Rule 11 Motion contained multiple references to the Benrimon Defendants' motion to dismiss, which Mr. Weiss did not receive until all of the Benrimon Defendants' motions were filed. (*See* A-499; A-304.) Thus, not only did the Benrimon Defendants fail to comply with Rule 11(c)(2)'s requirement that a motion for sanctions describe the specific conduct complained of, but they also totally failed to provide him with any meaningful opportunity to consider their sanctions request before the motions were filed. In addition, as detailed below, the briefing schedule set at the July 29 Conference specifically provided the Benrimon

Defendants with additional time to file their motions in order to allow them to serve Mr. Weiss in advance.  *See* § I.C., below.

When Mr. Weiss responded to the e-mail from the Benrimon Defendants' counsel the following day, he had not had sufficient opportunity to review the Rule 11 Motion, especially given that he had not yet seen most of the arguments on which the motion was based.[9]  Once the Benrimon Defendants' filed their Rule 11 Motion as well as their motion to dismiss, Mr. Weiss was forced to choose whether to oppose both motions or withdraw all or part of the Complaint and risk the appearance that he was admitting the Complaint included sanctionable content. *See* Rule 11, 1993 Amendment ("Under the former rule, parties were sometimes reluctant to abandon a questionable contention *lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions*") (emphasis added).

---

[9] The e-mail from opposing counsel asking Mr. Weiss to "please confirm that [he] will not withdraw the First Amended Complaint . . . so that we can file our Rule 11 motion on October 18 along with our motion to dismiss" is, at best, disingenuous. (A-499.)  Presumably realizing that they had not complied with Rule 11's safe harbor provision, the Benrimon Defendants demanded a response from Mr. Weiss who, as a professional courtesy, responded to the e-mail.  Had Mr. Weiss not responded, it is likely that the Benrimon Defendants would have still filed two days later and argued that Mr. Weiss's failure to respond constituted a refusal to withdraw the Complaint.

For the same reason, the District Court's reliance on Mr. Weiss's conduct after the Rule 11 Motion was filed cannot form the basis for excusing the Benrimon Defendants' noncompliance with Rule 11(c)(2). *See* Sanctions Order at 75 ("Plaintiff then proceeded to defend the allegations and claims in his Complaint on their merits. Even today, he stands by these allegations."). However, as noted above, the entire purpose of Rule 11(c)(2) is to permit a recipient of a Rule 11 motion to consider withdrawing the pleading *before the motion is filed* in order to avoid sanctions. After a Rule 11 motion is filed, the safe harbor provision is meaningless.

Under these circumstances, the District Court abused its discretion when it excused the Benrimon Defendants' blatant violation of Rule 11(c)(2).

## C.  The District Court's Decision To Excuse Compliance With Rule 11's Safe Harbor Provision Was Fundamentally Unfair To Mr. Weiss Based On The Briefing Schedule Set At The July 29 Conference

The purpose of Rule 11's safe harbor period is to provide the respondent with sufficient time to consider whether to withdraw the challenged pleading. *See ATSI Commc'ns, Inc.*, 579 F.3d at 150. Moreover, because of the serious consequences of a Rule 11 motion, courts have stressed that one of the purposes of the safe harbor period is ensure that the respondent who stands accused of signing a frivolous pleading or paper is afforded due process before sanctions are imposed. *See Baffa*, 222 F.3d at 58; *Castro v. Mitchell,* 727 F. Supp. 2d 302, 306 (S.D.N.Y.

2010); *see also* Rule 11, 1993 Adv. Comm. Notes ("To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion").

Here, the District Court set a briefing schedule at the July 29 Conference, which provided that the Rule 11 Motion as well as the Benrimon Defendants' motion to dismiss would be filed on October 18, 2019. (A-228-A-229.) During the conference, the parties and the court specifically contemplated that the Benrimon Defendants would first need to serve their Rule 11 Motion on Mr. Weiss twenty-one days prior to filing. (*Id.*)

Specifically, the court asked counsel for the Benrimon Defendants whether he intended to bring the Rule 11 Motion along with the motion to dismiss and, if so, whether thirty days would be sufficient time to do both. (A:228.) Counsel for the Benrimon Defendants responded: "I think, your Honor, *I need to serve him with the motion*. . . . If he plans to review the motion to decide what he's doing. I think that allows for the calendar that we need." (A-228:9-10) (emphasis added). The court agreed and stated: "So if you want the additional time *because I suspect that within a week or so of the 6th of September you'll be filing your motion, your papers, your notice to him.*" (*Id.*) (emphasis added). Thus, the Benrimon Defendants understood their obligations under Rule 11 and intended to serve Mr.

Weiss with the Rule 11 Motion at least twenty-one days before filing. Based on the statements at the July 29 Conference, Mr. Weiss certainly expected that to happen. Instead, the Benrimon Defendants waited until approximately forty-eight hours before the filing deadline to e-mail Mr. Weiss a copy of their brief in support of Rule 11 sanctions and demanded that he confirm, within two days, whether he intended to withdraw his pleading.[10]

The Benrimon Defendants' eleventh-hour e-mail to Mr. Weiss did not comport with Rule 11's due process standard, especially given the fact that the lower court expressly discussed the issue and the briefing schedule to accommodate counsel for defendants.

## II.

### THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT HELD THAT MR. WEISS VIOLATED RULE 11

Rule 11 sanctions should only be awarded as a last resort where it is "patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *See Eastway Constr. Corp. v. City of New York*,

---

[10] In addition to failing to comply with Rule 11's safe harbor period, it also appears that the Benrimon Defendants did not properly serve Mr. Weiss under Rule 5, insofar as there is no evidence in the record that Mr. Weiss previously consented to e-mail service. *See* Rule 11(c)(2); Fed. R. Civ. P. 5(b)(2).

762 F.2d 243, 254 (2d Cir. 1985). Moreover, "[c]ourts must strive to avoid the wisdom of hindsight . . . and any and all doubts must be resolved in favor of the signer." *Id.* "The failure to plead RICO allegations in conformity with Rule 9(b) cannot form the basis for sanctions." *Patrick Carter Assocs., Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*, No. 89 Civ. 7716 (WCC), 1990 WL 195993, at *6 (S.D.N.Y. Nov. 28, 1990); *accord United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 455 (S.D.N.Y. 2004).

Courts measure whether a position is frivolous within the meaning of Rule 11 based on an "objective standard of reasonableness." *Int'l Bhd. of Teamsters,* 948 F.2d at 1344. A claim or contention is frivolous if it is clear that "there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990); *see also Sussman v. Bank of Israel,* 56 F.3d 450, 457 (2d Cir. 1995) (internal citations omitted).

Courts must adhere to the strict requirement of Rule 11 and the corresponding caselaw and refrain from imposing sanctions where the claims or arguments advanced are not objectively unreasonable, even in a RICO case where courts have recognized the stigmatizing effect of such allegations. *See United States Fire Ins. Co*, 303 F. Supp. 2d at 455 (denying Rule 11 sanctions in RICO case where court could not "say with confidence that Plaintiff's substantive

arguments were destined to fail based on existing precedent") (internal quotations omitted); *Patrick Carter Assocs., Inc.*, 1990 WL 195993 at *6 (denying Rule 11 sanctions where "it does not appear that the pleadings have been interposed for any improper purpose or that a reasonable attorney could not have formed a reasonable belief that the pleading was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law").

Here, the District Court imposed sanctions based on allegations in the Complaint that the Benrimon Defendants were "in the business of lending money" at a usurious rate within the meaning of 18 U.S.C. § 1961(6). (A-639-A-640.) The District Court concluded that 28 U.S.C. § 1961(6) required the Complaint to allege multiple usurious loans and that Mr. Weiss's arguments to the contrary was objectively unreasonable. The District Court also concluded that Mr. Weiss's allegation that the Benrimon Defendants' failed to disclose the Shtar Isko agreement to the court in the forfeiture proceeding in Chowaiki's criminal case was "factually inaccurate" and therefore sanctionable. As detailed below, neither of the District Court's findings justify the imposition of Rule 11 sanctions.

## A.    Mr. Weiss Had A Good Faith Basis To Allege That The Benrimon Defendants Were Engaged In The Business Of Lending Money At A Usurious Rate

Where a lawyer advances an argument that, while unsuccessful, is based on a good faith argument in the face of negative authority, Rule 11 sanctions are not

appropriate. *See Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable"); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 NGG, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("Rule 11 sanctions are not appropriate where there is a viable claim that is weak").

Rule 11 sanctions are particularly inappropriate in the absence of binding authority that forecloses a party's position or where a party spends considerable time distinguishing contrary authority. *See Kim v. Kimm*, 884 F.3d 98, 106–07 (2d Cir. 2018) (denying Rule 11 sanctions in RICO case where plaintiff's claims were "not so obviously foreclosed by precedent as to make them legally indefensible"); *Medina v. City of New York*, No. 19-cv-9412 (AJN), 2020 WL 7028688, at *15 (S.D.N.Y. Nov. 30, 2020) (denying Rule 11 sanctions where counsel "proffered reasonable arguments as to why the present case could be distinguished" from arguably controlling precedent); *Artemov v. TransUnion, LLC*, 20-cv-1892 (BMC), 2020 WL 6146624, at *2 (E.D.N.Y. Oct. 20, 2020) (denying Rule 11 sanctions where "no binding authority foreclosed plaintiff's claims") (internal citation omitted); *compare with O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) (upholding sanctions where plaintiff "failed to allege *even one act* that could qualify as racketeering activity under RICO"); *Charles v. Levitt*, 15 Civ. 9334  Civ. 9334(PAE), 9758 (PAE), 2016 WL 3982514, at *7 (S.D.N.Y.

2016), *aff'd and remanded*, 716 F. App'x 18 (2d Cir. 2017) (imposing sanctions based on Plaintiff's "wild speculation" and inclusion of "plainly irrelevant, absurd, and/or scurrilous statements"); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ.2561 (KMW) (GWG), 2003 WL 22227956, at *9 (S.D.N.Y. Sept. 26, 2003) (imposing sanctions where lawyer did not "even bother[] to make an argument that the allegations in the complaint were supported by a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law").

For example, in *Fishoff*, the district court declined to impose sanctions, holding that the plaintiff's position was "not without some support—albeit non-binding and unpersuasive." *Fishoff*, 634 F.3d at 655 (quotations omitted). On appeal, this Court agreed, holding that the plaintiff's arguments were not frivolous as they were "not foreclosed a priori by binding precedent even if they were unlikely to succeed, and Fishoff's position was not unsupported by case law even though the cases he cited were not binding on the court adjudicating his claims." *Id.*

Here, Mr. Weiss advanced several arguments in support of his position that the Benrimon Defendants were engaged in "the business of lending money" at a usurious rate. Moreover, as detailed below, this Court specifically left open the question of what it means to be "in the business" of lending money at usurious rates for the purpose of RICO. *See Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*,

755 F.2d 239, 250 (2d Cir. 1985). Accordingly, Mr. Weiss's arguments were not "foreclosed a priori" by binding precedent. *See Fishoff*, 634 F.3d at 655.

Mr. Weiss advanced the following arguments in support of his position:

First, Mr. Weiss argued in the District Court that there is nothing in the text of 18 U.S.C. § 1962(c), which requires the definition of "the business of lending money" to mean multiple loan transactions and "[i]f that is what Congress intended it could have easily so provided." (A-368.) Citing to the Congressional Record, Mr. Weiss also noted that while Congress amended the RICO legislation to create more difficult standards in certain situations, such as requiring at least two acts (instead of the originally required one) to form a "pattern" of racketeering activity, Congress did not see fit to alter or clarify the definition of the "business of lending money or a thing of value at a usurious rate" in order to expressly require multiple loan transactions in order to "be in the business" of lending money. (*Id*.)

Second, Mr. Weiss argued that the definition of "illegal gambling business" in another portion of the Organized Crime Control Act (which includes RICO), supported the argument that the definition of "the business of lending money" does not require multiple loan transactions. (A-369.) Mr. Weiss argued that Congress defined "illegal gambling business" as a gambling business which, *inter alia*, "has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." (*See id.*) (quoting

18 U.S.C. § 1955(b)).  Mr. Weiss acknowledged that, although that definition does

not apply to 18 U.S.C. § 1961(6),[11] it does demonstrate that, where Congress, in

the same statute, chose to define a particular type of illegal "business," it did not

require multiple transactions or require the business to exist for a particularly long

period of time.

Third, Mr. Weiss argued that New York's definition of "criminal usury in

the first degree" N.Y. Penal Law §190.42, which was enacted a few years before

RICO, and which provides that "the actor's conduct was part of a scheme or

business of making or collecting usurious loans," further supported the argument

that "the business of lending money or a thing of value" can involve only one

transaction.  (A-370-A-371.)  Mr. Weiss relied upon *People v. Valentzis*, 70

N.Y.2d 446 (1987) in which the New York Court of Appeals  held that a defendant

was engaged in a "scheme *or business* of making or collecting usurious loans"

based on a single loan transaction which was subsequently renegotiated.

(emphasis added).

Fourth, Mr. Weiss cited *Middle States Knowlton Corp. v. Esic Capital, Inc.*,

No. Civ. A. Nos. 82-1911, 82-1912, 82-1913, 82-1926 and 82-1941, 1985 WL

---

[11] Unlawful debts under RICO also includes debts incurred in connection with illegal gambling and incurred in connection the criminal "business of gambling." 18 U.S.C. § 1961(6).

7441 (D.D.C. Oct. 16, 1985), which cited *Durante Bros.* and held that where a party actively negotiated and finalized a usurious loan, that "sole consummated transaction" would satisfy RICO's "business of lending money" requirement. (A-370.) In that case, the parties identified the various activities in which the defendant engaged in furtherance of the usurious loan, including negotiating, funding, finalizing, collecting, and re-negotiating on the loan, and argued that was sufficient to show that the defendant was "in the business" of making usurious loans. (*Id.*) That is exactly what Mr. Weiss did here and he relied on *Middle States Knowlton Corp.* when he drafted the Complaint. (*See* A-147-A-150, ¶¶ 84-89; A-124-A-125, ¶ 10.) Although not controlling, the case certainly provided a basis for Mr. Weiss' argument.

Fifth, Mr. Weiss analyzed the cases that the Benrimon Defendants cited and included additional authority that supported his position. (A-370 at n.7.) The Sanctions Order relies heavily on *Durante Bros.* in support of the proposition that the "business of lending money" at a usurious rate for purposes RICO requires the plaintiff to allege that the defendant engaged in multiple loan transactions. (A-609) ("The Second Circuit has interpreted the statute to make clear that a RICO claim for collection of unlawful debt does not encompass 'occasional usurious transactions by one not in the business of loan sharking.'") (quoting *Durante Bros.*, 755 F.2d at 250).

The Sanctions Order concluded, therefore, that Mr. Weiss' argument that the Benrimon Defendants were engaged "in the business" of making usurious loans was foreclosed by *Durante Bros.* because the Complaint failed to allege more than one transaction. (A-639-640.) However, *Durante Bros.* did not directly address that issue. Instead, this Court stated: "*[w]e leave for determination by the district court in the first instance the precise parameters of "the business" of usury as intended by Congress in § 1961(6).*" 755 F.2d at 250 (emphasis added)[12]; *see also United States v. Grote*, 961 F.3d 105, 120 (2d Cir. 2020) ("a RICO prosecution may be predicated on *a single instance of collection of unlawful debt*") (emphasis added). Aside from *Durante Bros.*, the Sanctions Order did not cite any other controlling cases that would have foreclosed Mr. Weiss's arguments. (*See* A-609 (citing *U.S. v. Persico*, No. 10-CR-147 (SLT), 2011 WL 2433728 (E.D.N.Y., Jun. 14, 2011). In other words, Mr. Weiss acted responsibly and in accordance with his ethical obligations when he argued that he had validly stated a claim for the collection of unlawful debt under RICO.

The question is not whether Mr. Weiss was correct in his analysis of RICO and the corresponding case law. He is not seeking to appeal the dismissal of his

---

[12] *Durante Bros.* involved multiple loans and therefore the issue here was not squarely before the court in that case. *See Durante Bros.*, 755 F.2d at 241 (observing that the action involved "certain loans" that defendants made to multiple parties over a period of several years).

client's claims or relitigate the District Court's holding with respect to the unlawful debt claims. On the contrary, the question before this Court is simply whether Mr. Weiss advanced a non-frivolous argument in support of his position. Like the plaintiff in *Fishoff*, Mr. Weiss's argument was "not foreclosed a priori by binding precedent" and therefore not sanctionable. *Fishoff*, 634 F.3d at 655.

The District Court therefore abused its discretion when it concluded that Mr. Weiss's argument was sanctionable.

## B. Mr. Weiss's Allegations Concerning The Shtar Isko Agreement Were Factually Supported

In imposing sanctions for the unlawful debt claims, the District Court also concluded that Mr. Weiss's allegations concerning the Shtar Isko were "reckless" and "factually inaccurate." (A-640-A-641.) As shown above, Mr. Weiss's argument that the Benrimon Defendants violated RICO based on the collection of unlawful debt did not violate Rule 11. However, to the extent that the allegation in the Complaint about the Shtar Isko served as an independent basis for sanctions, the District Court's finding of fact on this issue is clearly erroneous and therefore an abuse of discretion. *See Cooter & Gell*, 496 U.S. at 405.

Mr. Malvar alleged in the Complaint that in Chowaiki's Criminal Case, the Benrimon Defendants "caused Piedmont's verified petition . . . to omit the *Shtar Isko* which shows that . . . [Chowaiki and Piedmont] were actually 50%-50% equal partners – and not unrelated bona fide purchasers for value reasonably without

knowledge to believe that the property [Piedmont was claiming in the forfeiture proceedings in the Criminal Case] was subject to forfeiture."  (A-145, ¶ 76.)

The District Court erroneously concluded that this allegation was factually inaccurate because, in the Criminal Case, Piedmont filed as an exhibit to their papers, the "Note" between Piedmont and Chowaiki's gallery, which stated that Chowaiki agreed to pay "in accordance with Heter Iska, all outstanding principal to Piedmont."  (A-641) (quoting Note from Piedmont Loan).  The District Court therefore concluded:  "In alleging that Piedmont did not disclose the existence of the Shtar Isko in the Criminal Case, Plaintiff either failed to conduct a reasonable inquiry into the Criminal Case, or alleged something he knew to be false."  (*Id.*) The District Court's finding rests entirely on the erroneous conclusion that the statement in the Note that payments were "in accordance with Heter Iska" was identical to the written "Shtar Isko" agreement. This is incorrect and conflates the meanings of "Heter Iska" and "Shtar Isko."  They have different meanings.

Mr. Weiss never disputed that Piedmont filed the "Note" in Chowaiki's Criminal Case or that the Note stated that Piedmont was loaning the money to Chowaiki's gallery "in accordance with Heter Iska."  (A-325.)  However, the only significance of that phrase in the Note is that the Piedmont Loan was structured in accordance with a principle that permits money lending under Jewish Law.  *Heter*

*Iska is a concept* that means business dispensation.[13]  It is not a document and provides no details about the arrangement between the parties other than that it complies with a dispensation under Jewish law.  "In accordance with Heter Iska" is even less concrete.  Significantly, when faced with only a reference to Heter Iska in a document, courts will usually not enforce the provision.  *See, e.g., Arnav Indus., Inc. Employee Retirement Trust v. Westside Realty Assocs.,* 180 A.D.2d 463, 464 (1st Dep't 1992).

A Shtar Iska, by contrast, is an actual document which memorializes a specific  agreement between parties.[14]  *See id.*; *see also In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 466 (Bankr. S.D.N.Y. 2000).

Mr. Weiss correctly alleged in the Complaint that Piedmont did not disclose the Shtar Isko to the court in Chowaiki's Criminal Case.  (A-145, ¶ 76.)  The Note, which the District Court cited in the Sanctions Order does not make any reference to Chowaiki and Piedmont entering into an equal partnership.  The written Shtar Isko agreement does.

---

[13] *See The Oxford Encyclopedia of the Jewish Religion*, p. 215 (2d. ed. 2011) defining "hetter" as a "dispensation . . . authority to relax certain laws in order to alleviate hardship" and ". . . *hetter `isqa´* (business dispensation) was a formula by which it was permitted to take interest").

[14] *See Encyclopaedia Judaica*, Vol. 18 (2d ed.), 467 (2007) (defining "Shettar" as a "formal legal document, or deed, derived from the Akkadian *šatāru*, meaning writing").

Further, the Note, which memorialized the Piedmont Loan is between Piedmont and Chowaiki's Gallery. The written Shtar Isko Agreement is between Piedmont and Chowaiki personally, and, on its face it states that Piedmont paid Mr. Chowaiki separate consideration for agreeing to it. (A-145, ¶ 76.) In other words, without the written Shtar Isko agreement, there was simply no way to know the exact details of the transaction between Piedmont and Chowaiki's gallery, or the exact nature of the transaction between Piedmont and Chowaiki.

Although the District Court may have concluded that the reference in the Note to "Heter Iska" was sufficient to imply that Piedmont and Chowaiki's gallery executed a document describing a partnership, Mr. Weiss' statement in the Complaint that Piedmont concealed the Shtar Isko from the court in Chowaiki's criminal case was factually correct. As a result, it was improper to use Mr. Weiss's allegation in the Complaint concerning the Shtar Isko as a basis to impose sanctions in connection with the unlawful debt claims.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court enter an Order: (i) reversing the district court's order, which held that Mr. Weiss violated Fed. R. Civ. P. 11 and directed him to pay the Benrimon Defendants $20,000; (ii) directing the Benrimon Defendants' to repay the $20,000 that Mr. Weiss paid in connection with the district court's order; together with interest and costs; and (iii) granting such other and further relief as the Court deems proper.

Dated: New York, New York
       February 22, 2021

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: *  /s/ Tyler Maulsby*
       Tyler Maulsby

28 Liberty Street, 35th Fl.
New York, NY 10005
Tel: (212) 980-0120
Fax: (347) 438-2152
tmaulsby@fkks.com

*Attorneys for Appellant Sidney N. Weiss*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure,

the foregoing brief is in 14-Point Times Roman proportional font and contains

11,180 words and thus is in compliance with the type-volume limitation set forth in

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:  New York, New York
      February 22, 2021

                    FRANKFURT KURNIT KLEIN & SELZ, P.C.


                    By:*/s/ Tyler Maulsby*
                        Tyler Maulsby

                    28 Liberty Street, 35th Fl.
                    New York, NY 10005
                    Tel:  (212) 980-0120
                    Fax:  (347) 438-2152
                    tmaulsby@fkks.com

                    *Attorneys for Appellant Sidney N. Weiss*

# SPECIAL APPENDIX

**i**

## SPECIAL APPENDIX
## TABLE OF CONTENTS

**Page**

So-Ordered Stipulation of Plaintiff and Defendant
Ezra Chowaiki to Dismiss the Action, dated
October 13, 2020 ................................................. SPA-1

So-Ordered Stipulation and Order of Dismissal,
dated October 13, 2020......................................... SPA-3

So-Ordered Stipulation and Order of Dismissal,
dated October 16, 2020......................................... SPA-5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**MEMO ENDORSED**

---

ALEJANDRO DOMINGO MALVAR
EGERIQUE,

        Plaintiff,

        v.

EZRA CHOWAIKI, DAVID BENRIMON
FINE ART LLC, DAVID BENRIMON,
LINDA BENRIMON also known as LINDA
ROSEN, PIEDMONT CAPITAL LLC,
AVICHAI ROSEN, and JOHN DOES 1-10,

        Defendants.

19-cv-03110-KPF

---

### STIPULATION OF PLAINTIFF AND DEFENDANT, EZRA CHOWAIKI, TO DISMISS THE ACTION, WITHOUT PREJUDICE, AGAINST DEFENDANTS JOHN DOES 1-10, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4 (m).

Plaintiff and remaining non-John Doe defendant, Ezra Chowaiki, stipulate and agree that defendants John Does 1-10, shall be dismissed from this action, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

The complaint in this action was filed on April 8, 2019, ECF-1, and the summons was issued on April 9, 2019, ECF-8. Defendants John Doe 1-10 were never served, and were never identified in the pleadings or thereafter, and no facts were pleaded with respect to those defendants. It has been 18 months since the summons and complaint were filed.

Federal Rule of Civil Procedure 4(m) provides that "If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant…"

Inasmuch as it has been more than 90 days since the complaint has been filed, and defendants, John Does 1-10 have not been served, plaintiff and defendant Ezra Chowaiki, the

only non-John Doe defendant remaining in this action, in lieu of a joint-motion, stipulate and

respectfully request that defendants John Does 1-10 be dismissed from this action without

prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

Respectfully submitted,

SIDNEY N. WEISS
*Attorney for Plaintiff, Alejandro*
*Domingo Malvar Egerique*
675 Third Avenue, Suite 2600
New York, New York 10017
Mobile: 1-914-262-2346
snw@weisslaw.net

Adam M. Felsenstein
Tannenbaum Helpern Syracuse & Hirschtritt LLP
*Attorneys for Defendant Ezra Chowaiki*
900 Third Avenue
New York, New York 10022
Email: felsenstein@thsh.com
Tel: (212) 508-7533
Fax: (212) 371-1084

New York, New York
October __, 2020

**SO ORDERED:**

Katherine Polk Failla
United States District Judge

```
Dated:   October 13, 2020
         New York, New York
```

```
Application GRANTED. The Clerk of Court is directed to terminate all
pending motions, adjourn all remaining dates, and close this case solely
as to Defendants John Does 1-10.
```



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEJANDRO DOMINGO MALVAR
EGERIQUE,

19-cv-03110-KPF

                    Plaintiff,

                                        STIPULATION & ORDER OF
          v.                            DISMISSAL

EZRA CHOWAIKI, DAVID BENRIMON
FINE ART LLC, DAVID BENRIMON,
LINDA BENRIMON also known as LINDA
ROSEN, PIEDMONT CAPITAL LLC,
AVICHAI ROSEN, and JOHN DOES 1-10,

                    Defendants.

    Having reached and executed a settlement agreement in which David Benrimon Fine Art

LLC, David Benrimon, Linda Benrimon also known as Linda Rosen, Piedmont Capital LLC, and

Avichai Rosen, (the "Benrimon Defendants") acknowledge plaintiff's full right, title, possession,

and ownership of Pablo Picasso's *le Gueridon*, free and clear of all liens and encumbrances, and

at no cost or charge to plaintiff; and to the extent the Benrimon Defendants possess or claim such

right or title, the Benrimon Defendants convey all of the foregoing to plaintiff; and the Benrimon

Defendants having delivered Pablo Picasso's *le Gueridon* to plaintiff:

    IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff and the

Benrimon Defendants, that the above action between them – and any and all suits, actions,

causes of action, controversies, demands, rights, damages, losses, expenses, costs, attorneys'

fees, compensation, liabilities, obligations and claims and defenses of every kind and nature

Plaintiff ever had, or now has, against the Benrimon Defendants, and any of the Benrimon

Defendants ever had, or now has, against Plaintiff—be, and hereby are, dismissed with

prejudice. Each party to bear its own costs.

Dated: New York, New York
     October 1, 2020

By: _Sidney N. Weiss_
SIDNEY N. WEISS
*Attorney for Plaintiff Alejandro*
*Domingo Malvar Egerique*

675 Third Avenue, Suite 2600
New York, New York 10017
1-212-986-5309
Mobile: 1-914-262-2346
snw@weisslaw.net


By: _Luke Nikas_
Luke Nikas
Quinn Emanuel Urquhart & Sullivan LLP
*Attorneys for Benrimon Defendants*
51 Madison Avenue
New York, NY 10010
212-849-7000
Fax: 212-849-7100
Email: lukenikas@quinnemanuel.com

New York, New York
October 13, 2020

SO ORDERED:

_Katherine Polk Failla_
KATHERINE POLK FAILLA
United States District Judge


Application GRANTED. The Clerk of Court is directed to terminate all
pending motions, adjourn all remaining dates, and close this case
solely as to Defendants David Benrimon Fine Art LLC, David Benrimon,
Linda Benrimon, Piedmont Capital LLC, and Avichai Rosen.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEJANDRO DOMINGO MALVAR
EGERIQUE,

                Plaintiff,

                v.

EZRA CHOWAIKI, DAVID BENRIMON
FINE ART LLC, DAVID BENRIMON,
LINDA BENRIMON also known as LINDA
ROSEN, PIEDMONT CAPITAL LLC,
AVICHAI ROSEN, and JOHN DOES 1-10,

                Defendants.

19-cv-03110-KPF

**STIPULATION & ORDER OF
DISMISSAL WITH RESPECT TO
DEFENDANT EZRA CHOAWIKI**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff and Defendant

Ezra Chowaiki that having settled the case between them, the above action between them be, and

hereby is, dismissed with prejudice against defendant Ezra Chowaiki and Plaintiff. Each party to

bear his own costs.

This stipulation and order of dismissal does not affect the rights, obligations, claims, or

defenses of any person or entity other than Plaintiff and Ezra Chowaiki. Nor does it affect any

claims Plaintiff or Ezra Chowaiki have or may have against anyone other than Plaintiff or Ezra

Chowaiki concerning the subject matter of this action or concerning Pablo Picasso's *le Gueridon*

and Fernand Leger's *Composition avec Profil de Femme* [Composition with a Woman's

profile/face], also known or described as *JAZZ-recto JOUER DE CONTREBASSE ET SCENE
DE CIRQUE.*

1

Respectfully submitted,

SIDNEY N. WEISS
*Attorney for Plaintiff, Alejandro*
*Domingo Malvar Egerique*
675 Third Avenue, Suite 2600
New York, New York 10017
Mobile: 1-914-262-2346
snw@weisslaw.net

Adam M. Felsenstein
Tannenbaum Helpern Syracuse & Hirschtritt LLP
*Attorneys for Defendant Ezra Chowaiki*
900 Third Avenue
New York, New York 10022
Email: felsenstein@thsh.com
Tel: (212) 508-7533
Fax: (212) 371-1084

New York, New York
October 16, 2020

**SO ORDERED:**

KATHERINE POLK FAILLA
United States District Judge

Dated:   October 16, 2020
         New York, New York

The Clerk of Court is directed to terminate all pending
motions, adjourn all remaining dates, and close this case.