# 20-3842-cv

## United States Court of Appeals

### *for the*

## Second Circuit

ALEJANDRO DOMINGO MALVAR EGERIQUE,

*Plaintiff,*

SIDNEY N. WEISS,

*Appellant,*

– v. –

EZRA CHOWAIKI,

*Defendant,*

DAVID BENRIMON FINE ART LLC, DAVID BENRIMON,
LINDA BENRIMON, aka Linda Rosen, PIEDMONT CAPITAL LLC,
AVICHAI ROSEN,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR APPELLANT

TYLER MAULSBY
FRANKFURT KURNIT KLEIN & SELZ PC
*Attorneys for Appellant*
28 Liberty Street
New York, New York 10005
(212) 980-0120

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT .......................................................................................... 4

I.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT
     EXCUSED NON-COMPLIANCE WITH THE SAFE HARBOR
     PROVISION OF RULE 11 ............................................................. 4

II.  MR. WEISS'S ARGUMENT THAT THE BENRIMON
     DEFENDANTS WERE IN THE BUSINESS OF LENDING MONEY
     AT USURIOUS RATES WAS NOT FRIVOLOUS ..................................... 9

III. MR. WEISS'S DISTINCTION BETWEEN HETER ISKA AND A
     SHTAR ISKO DID NOT VIOLATE RULE 11 ........................................... 15

CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albany Savings Bank, FSB v. Halpin,*
117 F.3d 669 (2d Cir. 1997) ...............................................................19

*Arnav Indus., Inc. Employee Retirement Trust v. Westside Realty Assocs.,*
180 A.D.2d 463 (1st Dept. 1992) ...............................................16, 17

*Artemov v. TransUnion, LLC,*
20-CV-1892 (BMC), 2020 WL 6146624 (E.D.N.Y. Oct. 20, 2020).................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
222 F.3d 52 (2d Cir. 2000) ...................................................................5

*Becker v. Poling Transp. Corp.,*
356 F.3d 381 (2d Cir. 2004) ...............................................................19

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.,*
447 F. Supp. 2d 329 (S.D.N.Y. 2006) ..................................................8

*Bryant v. Britt,*
420 F.3d 161 (2d Cir. 2005) .................................................................5

*Charles v. Levitt,*
15 Civ. 9334 (PAE), 2016 WL 3982514 (S.D.N.Y. 2016) ................................14

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
02 Civ. 2561 (KMW) (GWG), 2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003) ...................................................................................14

*Durante Bros. and Sons, Inc. v. Flushing Nat. Bank,*
755 F.2d 239 (2d Cir. 1985) ...............................................10, 11, 12, 13

*Fishoff v. Coty Inc.,*
634 F.3d 647 (2d Cir. 2011) ...................................................9, 10, 13

*Jennings v. Stephens,*
574 U.S. 271 (2015)...............................................................................19

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ........................................................10, 13

*Lan v. Time Warner, Inc.*,
    No. 11 Civ. 2870(AT)(JCF), 2015 WL 4469838 (S.D.N.Y. July 13,
    2015) ...........................................................................................7

*Libaire v. Kaplan*,
    No. Civ.A. 06-1500, 2008 WL 794973 (E.D.N.Y. Mar. 24, 2008)......................7

*Madison Park Inv'rs LLC v. 488-486 Lefferts LLC*,
    2015 WL 471786 (Sup. Ct. N.Y. Cty. Feb. 5, 2015)..........................................16

*McLoughlin v. Altman*,
    1995 WL 640770 (S.D.N.Y. Oct. 31, 1995)......................................14

*Medina v. City of New York*,
    19-CV-9412 (AJN), 2020 WL 7028688 (S.D.N.Y. Nov. 30, 2020) .................10

*Middle States Knowlton Corp. v. Esic Capital, Inc.*,
    Civ. A. Nos. 82-1911, 82-1912, 82-1913, 82-1926, 82-1941, 1985
    WL 7441 (D.D.C. Oct. 16, 1985) ....................................................13

*O'Callaghan v. Sifre*,
    242 F.R.D. 69 (S.D.N.Y. 2007) ........................................................8

*O'Malley v. New York City Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990) ............................................................14

*Perpetual Securities, Inc. v. Tang*,
    290 F.3d 132 (2d Cir. 2002) .................................................5, 6, 7, 8

*Rodiboux v. Conti*,
    741 F. Supp. 1019 (D.R.I. 1990) .....................................................12

*Rojas v. Theobald*,
    02-CV-3623 (DRH)(MLO), 2007 WL 2455133 (E.D.N.Y. Aug.
    23, 2007) ....................................................................................8

*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
    03-CV-1851 NGG, 2007 WL 1026411 (E.D.N.Y. Mar. 30, 2007)......................9

*Watkins v. Smith*,
12 Civ. 4635 (DLC), 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013)......................7

*Weisel v. Pischel*,
197 F.R.D. 231 (E.D.N.Y. Oct. 31, 2000)..........................................................12

**Statutes**

18 U.S.C. § 1961.................................................................................*passim*

28 U.S.C. § 2283..........................................................................................14

**Rules**

Fed. R. Civ. P. 5............................................................................................7

Fed. R. Civ. P. 11....................................................................................*passim*

**Other Authorities**

Daniel Klein, *The Islamic and Jewish Laws of Usury: A Bridge to
Commercial Growth and Peace in the Middle East*, 23 Denv. J.
Int'l L. & Pol'y 535, 543 (1995) .......................................................16

Jay M. Zitter, *Application, Recognition, or Consideration of Jewish
Law by Courts in the United States*, 81 A.L.R. 6th 1, § 4 (2013) ......................16

Appellant Sidney N. Weiss ("Mr. Weiss" or "Appellant") respectfully submits this reply brief in further support of his appeal of the decision and order dated April 24, 2020 by the Hon. Katherine Polk Failla to the extent that the Order held that Mr. Weiss violated Fed. R. Civ. P. 11, and imposed a $20,000 monetary sanction.

## PRELIMINARY STATEMENT

Mr. Weiss seeks reversal of the Sanctions Order[1], which found that he violated Rule 11 when he alleged in plaintiff's First Amended Complaint that the Benrimon Defendants were "in the business of lending money" at a usurious rate for purposes of RICO and that, in Mr. Chowaiki's Criminal case, the Benrimon Defendants intentionally concealed from the court and Mr. Chowaiki's creditors and victims, the existence of a partnership agreement between Piedmont and Mr. Chowaiki.

The district court's decision to impose sanctions constituted an abuse of discretion because it was based on errors of law and mistakes of fact. The Benrimon Defendants deliberately violated the safe harbor provisions of Rule 11 (c)(2) when they filed their sanctions motion and Mr. Weiss's claims were not frivolous. The Benrimon Defendants largely ignore the arguments on these points,

---

[1] Terms not defined herein will have the same meaning as in Mr. Weiss's opening brief dated February 22, 2021.

and instead seek to distract the Court by relitigating the merits of their motion to dismiss, which is not subject to this appeal. The arguments advanced in the Benrimon Defendants' Brief in Opposition ("Opposition" or "Opp.") fail for at least three reasons.

*First*, the Benrimon Defendants completely failed to comply with the safe harbor requirements of Rule 11(c)(2). They e-mailed Mr. Weiss a draft of their sanctions motion approximately forty-eight hours before the filing deadline, even though they acknowledged during an earlier conference with the district court that they needed to serve the motion within the time provided in Rule 11(c)(2).

Moreover, the Benrimon Defendants admit, for the first time, that their failure to follow Rule 11's safe harbor provision was intentional. But they argue that the district court was correct to excuse their noncompliance based on the court's *sua sponte* speculation that Mr. Weiss would not have withdrawn the "unlawful debt" claims or the Shtar Isko allegation even if afforded an opportunity to do so. This conclusion, however, rests on a misreading of Second Circuit precedent and completely circumvents the due process protections in Rule 11.

*Second*, the Benrimon Defendants are wrong that the "unlawful debt" claims were barred by "binding Court of Appeals precedent." (Opp. at 23.) The purportedly binding precedent on which the Benrimon Defendants rely is a portion of this Court's decision which *did not* conclusively decide the pleading standards

for unlawful debt claims under RICO, and expressly left for another day the exact scope of 18 U.S.C. § 1961(6). This Court's prior holdings did not render the unlawful debt claims objectively unreasonable, because there is no binding precedent by this Court on the issue, and ample authority supported Mr. Weiss's argument against dismissal.

*Third*, the Benrimon Defendants sidestep Mr. Weiss's argument about the difference between Heter Iska and a Shtar Isko and instead repeat their argument below that a Shtar Isko is identical to Heter Iska. This argument is inconsistent with the cases and authorities, many of which are cited in the Opposition, which distinguish between Heter Iska (a concept) and a Shtar Isko agreement (a writing), and which acknowledge that courts can analyze a Shtar Isko for its terms. Moreover, leaving aside the legal significance of a Shtar Isko, the Benrimon Defendants completely ignore that the "Note" that they presented in the Criminal Case and the Shtar Isko, which they did not present, involved different parties – the former being a loan transaction between Piedmont and Mr. Chowaiki's art gallery and the latter a written partnership agreement between Piedmont and Mr. Chowaiki personally – and referenced different consideration. Thus, even crediting the Benrimon Defendants' argument that their disclosure of the Note implies the existence of a Shtar Isko, it does not follow that the phrase on the Note, "in accordance with Heter Iska" put the court, creditors, and victims in the Criminal

Case on notice of the entire arrangement between the Benrimon Defendants and Mr. Chowaiki.

*Finally*, Mr. Weiss is not seeking to relitigate the dismissal of the RICO claims. The underlying case settled *after* the Benrimon Defendants returned Mr. Malvar's Picasso. But Mr. Weiss vehemently disagrees with the district court's conclusion that he advanced a frivolous claim or made reckless allegations. Mr. Weiss is a highly experienced lawyer who has been practicing in the federal courts with distinction and without issue for more than four decades. Mr. Weiss conducted a significant amount of legal and factual research before filing the Complaint. Although the district court may have disagreed with him, the law does not support a conclusion that Mr. Weiss's conduct was frivolous or violated Rule 11 in any way.

Accordingly, the Sanctions Order should be reversed.

## ARGUMENT

## I.

## THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT EXCUSED NON-COMPLIANCE WITH THE SAFE HARBOR PROVISION OF RULE 11

The Benrimon Defendants do not dispute that they failed to serve their motion for sanctions on Mr. Weiss twenty-one days before filing it, as Rule 11(c)(2) requires. Nor do the Benrimon Defendants proffer any reasonable

explanation for why they did not timely serve their motion for sanctions, even though the briefing schedule they requested from the district court during the pre-motion conference specifically accounted for the time they would need to comply with the safe harbor provision of Rule 11. (A-228-A-229.) Indeed, the Benrimon Defendants assert in their Opposition that their failure to comply with the safe harbor period was intentional in order to "avoid the need to request an extension." (Opp. at 9.) The Benrimon Defendants argue that their deliberate noncompliance with Rule 11(c)(2) should be excused because the district court was "certain that Plaintiff would not have withdrawn or amended the Compliant, even if he had been provided the full 21 days." (Opp. at 12 (citing A-634-A-637).) This argument fails.

The Benrimon Defendants' and the district court's reliance on *Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002) to excuse noncompliance with Rule 11(c)(2) is misplaced. (*See* Opp. at 13-14); (A-636.) *Perpetual Securities* does not create a blanket exception that permits a court to ignore the strict guidelines of Rule 11(c)(2). *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000) (reinforcing the "procedural rules [in Rule 11] which safeguard due process rights"); *Bryant v. Britt*, 420 F.3d 161, 163 n.2 (2d Cir. 2005) (upholding denial of sanctions where movant "failed to comply with Rule 11(c)[(2)]").

The Benrimon Defendants use *Perpetual Securities* as a sword in order to excuse their deliberate failure to comply with Rule 11. Tellingly, the Benrimon Defendants did not even cite *Perpetual Securities* in the district court and instead simply argued in their reply that because Mr. Weiss was on notice of the Benrimon Defendants' intention to seek sanctions based on their earlier letters, "the purpose of Rule 11(c)(2) has been fully satisfied." (A-538.) However, the Benrimon Defendants' letters threatening sanctions all pre-dated the First Amended Complaint, which was markedly different from the original complaint, and included a far more detailed revision of the unlawful debt claims. (*Compare* (A-41-45) *with* (A-147-A-151).)

Moreover, the Benrimon Defendants' sanctions motion was wide-ranging. This was not a situation where the Benrimon Defendants were demanding that Mr. Weiss retract specific claims or allegations. Instead, they claimed that *each and every one* of the claims in the complaint was frivolous and warranted sanctions, (A-312-316; A-555-A-558), and also adamantly denied possessing Mr. Malvar's Picasso. (A-557) ("Piedmont truthfully responded that it did not possess the work (none of the Benrimon Defendants possess or own the Picasso).") But the district court largely denied the Benrimon Defendants' sanctions motion, with the exception of the unlawful debt claims and the allegation related to the Shtar Isko. (A-563-A-649.) The district court also denied the Benrimon Defendants' motion

to dismiss certain of Mr. Malvar's state law claims. (*Id.*) After the district court's decision, the parties settled and the Benrimon Defendants returned the Picasso to Mr. Malvar at no cost. (SPA-3.) In short, the Benrimon Defendants' earlier blanket demands that Mr. Weiss withdraw his entire complaint has little bearing on whether he was provided with sufficient notice and opportunity to decide whether to withdraw the two claims that were the subject of the Sanctions Order.[2]

The cases cited in the Benrimon Defendants' Opposition as well as the Sanctions Order further support the position that courts have used *Perpetual Securities* to excuse technical noncompliance and not to reward a movant for intentionally flouting Rule 11's safeguards, as the Benrimon Defendants did here. *See Watkins v. Smith*, 12 Civ. 4635 (DLC), 2013 WL 655085, at *6 (S.D.N.Y. Feb. 22, 2013) (excusing noncompliance with Rule 11(c)(2) by an hour and a half); *Lan v. Time Warner, Inc.*, No. 11 Civ. 2870(AT)(JCF), 2015 WL 4469838, at *1-2 (S.D.N.Y. July 13, 2015) (excusing noncompliance with Rule 11(c)(2) by three days); *see also Libaire v. Kaplan*, No. Civ.A. 06-1500, 2008 WL 794973, at *15 (E.D.N.Y. Mar. 24, 2008) (denying sanctions where movant "fail[ed] to comply

---

[2] The Benrimon Defendants also argue that Mr. Weiss did not preserve for appeal the issue of whether he was properly served with the Rule 11 motion under Rule 11(c)(2) and Fed. R. Civ. P. 5. This argument misses the point. The issue is not whether improper service of the sanctions motion constitutes an independent ground for reversal. Instead, the Benrimon Defendants' deliberate failure to properly serve the Rule 11 motion, which they do not dispute, is further evidence of their overall disregard for their obligations under Rule 11.

with the safe harbor provision embodied in Rule 11(c)" despite substantive violations of Rule 11); *Rojas v. Theobald*, 02-CV-3623 (DRH)(MLO), 2007 WL 2455133, at *9–10 & n.8 (E.D.N.Y. Aug. 23, 2007), *aff'd,* 319 Fed.Appx. 43 (2d Cir. 2009) (denying motion for sanctions for failure to comply with safe harbor provision); *O'Callaghan v. Sifre*, 242 F.R.D. 69, 75–76 (S.D.N.Y. 2007) (same); *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 341 (S.D.N.Y. 2006) (same).

Finally, the Benrimon Defendants' emphasis on Mr. Weiss not withdrawing the Complaint after the sanctions motion was filed completely ignores the central purpose of the Rule 11's safe harbor protections. As detailed in Mr. Weiss's opening brief, once the Benrimon Defendants' filed their Rule 11 Motion and their motion to dismiss, Mr. Weiss was forced to choose whether to oppose both motions or withdraw all or part of the Complaint and risk the appearance that he was admitting the Complaint included sanctionable content. *See* Rule 11, 1993 Amendment ("Under the former rule, parties were sometimes reluctant to abandon a questionable contention *lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions*") (emphasis added).

Moreover, unlike the plaintiff in *Perpetual Securities*, it would be inappropriate to remand the matter to give Mr. Weiss an opportunity to withdraw

the allegations at issue even if he wanted to. The case has been fully dismissed with prejudice after the Benrimon Defendants returned the Picasso to Mr. Malvar at no cost. (SPA-3.) The district court did not conduct any inquiry into whether Mr. Weiss intended to withdraw any of his claims and, indeed, raised that issue *sua sponte* in the Sanctions Order after denying the parties' request for oral argument. (A-577.) Asking Mr. Weiss now whether he would have withdrawn a portion of his Complaint to avoid sanctions is speculative, and at best, an academic exercise.

Under these circumstances, the district court abused its discretion when it excused the Benrimon Defendants' noncompliance with Rule 11(c)(2).

## II.

### MR. WEISS'S ARGUMENT THAT THE BENRIMON DEFENDANTS WERE IN THE BUSINESS OF LENDING MONEY AT USURIOUS RATES WAS NOT FRIVOLOUS

As detailed in Mr. Weiss's opening brief, sanctions are not warranted simply because a lawyer advances an unsuccessful argument. *See Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable"); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 03-CV-1851 NGG, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("Rule 11 sanctions are not appropriate where there is a viable claim that is weak"). Instead, in order to impose sanctions, a court must find that a lawyer's claims were foreclosed by clear and binding precedent. *See*

*Fishoff*, 634 F.3d at 655; *see also Medina v. City of New York*, 19-CV-9412 (AJN), 2020 WL 7028688, at *15 (S.D.N.Y. Nov. 30, 2020) (denying Rule 11 sanctions where counsel "proffered reasonable arguments as to why the present case could be distinguished" from arguably controlling precedent); *Artemov v. TransUnion, LLC*, 20-CV-1892 (BMC), 2020 WL 6146624, at *2 (E.D.N.Y. Oct. 20, 2020) (denying Rule 11 sanctions where "no binding authority foreclosed plaintiff's claims") (internal citation omitted).  Although the Opposition suggests that a court should be more inviting of sanctions in a RICO case, the standard is no different from any other case and a court must find that a party's claims rose to the level of frivolous within the meaning of Rule 11.  *See Kim v. Kimm*, 884 F.3d 98, 106–07 (2d Cir. 2018) (denying Rule 11 sanctions in RICO case where plaintiff's claims were "not so obviously foreclosed by precedent as to make them legally indefensible").

The Benrimon Defendants argue that Mr. Weiss's "unlawful debt" claims were sanctionable because they were foreclosed by "well-established Second Circuit precedent" in *Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 250 (2d Cir. 1985).  (Opp. at 18-19.)  This argument is wrong.

The Benrimon Defendants' contention that *Durante Bros.* foreclosed Mr. Malvar's unlawful debt claims is based on what the Benrimon Defendants admit was a passing "observation" by the Court about what 18 U.S.C. § 1961(6) "seems

aimed" at accomplishing. (Opp. at 19 (quoting *Durante Bros.*, 755 F.2d at 250).) But *Durante Bros.* expressly left open the question of "the precise parameters of "the business" of usury as intended by Congress in § 1961(6)." 755 F.2d at 250. Given the scope of this Court's holding in *Durante Bros.*, the detailed analysis by Mr. Weiss of the text and legislative history of the RICO statute and other case law, the "observation" in *Durante Bros.* referenced above does not render the unlawful debt claims frivolous or sanctionable.

Moreover, *Durante Bros.* does not address the pleading standards for an unlawful debt claim under 18 U.S.C. § 1962(c). This Court decided *Durante Bros.* after a trial in the district court. *See* 755 F.2d at 241. The language on which the Benrimon Defendants rely relates to whether the plaintiff could overcome *summary judgment* on remand, not to the sufficiency of the complaint. Specifically, this Court reasoned that the plaintiff's unlawful debt claims "may well be vulnerable to *summary disposition*, for if Durante can show only that the defendants engaged in a 'scheme,' but not that they were in 'the business of' making usurious loans, its *proof* will not satisfy the statute." *Id.* at 249-250 (emphasis added). This Court was not concerned with what the plaintiff had pled, but with what the plaintiff could prove. *See id.* at 249 (remarking that the RICO claims were "adequately pleaded" but noting that the "problematical question . . . is whether Durante can show that it's loans were "'unlawful debt' within the

meaning of RICO"). Mr. Weiss never received an opportunity to prove his claims, or to conduct discovery and therefore *Durante Bros.* should not render the unlawful debt claims sanctionable.

Besides *Durante Bros.*, the Benrimon Defendants invoke two district court cases, neither of which is controlling and therefore add little to the Rule 11 analysis. (Opp. at 19) (citing *Weisel v. Pischel*, 197 F.R.D. 231 (E.D.N.Y. Oct. 31, 2000) and *Rodiboux v. Conti*, 741 F. Supp. 1019 (D.R.I. 1990)). For example, *Weisel*, analyzed the phrase "in the business of" making usurious loans in the context of a summary judgment motion, not a motion to dismiss.[3] *See Weisel*, 197 F.R.D. at 241-42; *see also Rodiboux*, 741 F. Supp. at 1021-22 (analyzing unlawful debt claims based on evidence submitted by defendant). Thus, in addition to not controlling the analysis, the cases also did not directly refute Mr. Weiss's argument in support of the unlawful debt claims.

In other words, the Benrimon Defendants' contention that the unlawful debt claim was sanctionable is based on a decision of this Court that expressly did not address "the precise parameters" of "the business of lending money" under 18 U.S.C. § 1961(6), did not decide the pleading standards for an unlawful debt claim,

---

[3] In *Weisel*, the unlawful debt claims were based on a single conclusory allegation, *see Weisel*, 197 F.R.D. at 241, which is markedly different from the detailed allegations in the Complaint here, which alleged a continuous money-lending business by Piedmont and Rosen and at least one other usurious transaction not involving Mr. Malvar or the Picasso. (A-147-A-151.)

and merely "observed" that a party may have difficulty surviving summary judgment if it cannot offer sufficient proof that the defendant was engaged in the "business of lending money" at usurious rates. *Durante Bros.* is therefore not binding precedent which foreclosed *a priori* the unlawful debt claims in this case. *Fishoff*, 634 F.3d at 654.

The Benrimon Defendants' Opposition also relitigates their motion to dismiss by arguing that the other authorities on which Mr. Weiss relied were insufficient to survive dismissal of the unlawful debt claims. (*See* Opp. 22-23.) But that is not the issue here and there is a significant difference between claims that are subject to dismissal and claims that rise to the level of warranting sanctions. *See Fishoff*, 634 F.3d at 654; *Kimm*, 884 F.3d at 106-07. Mr. Weiss has shown that he conducted in-depth legal research before asserting the unlawful debt claims and made an objectively reasonable argument based upon: (i) the text and history of 18 U.S.C. § 1962(c); (ii) the Organized Crime Control Act, which lent support to Mr. Weiss's statutory interpretation argument; (iii) relevant New York state law regarding the business of lending at usurious rates; (iv) *Middle States Knowlton Corp. v. Esic Capital, Inc.*, 1985 WL 7441 (D.D.C. Oct. 16, 1985); and (v) facts which detailed the ongoing relationship between Mr. Chowaiki and the Benrimon Defendants and the business of lending money or a thing of value at a usurious rate. (A-147-A-151); (A-368-A-371.) Moreover, Mr. Weiss did not rely

on these authorities in the face of "binding Court of Appeals precedent" as the

Benrimon Defendants argue. (Opp. at 23.)[4]

Mr. Weiss reasonably believed that the pleading standards required to allege

the collection of an unlawful debt under RICO were still unsettled and he advanced

a good faith argument in support of his position. The district court disagreed with

Mr. Weiss. But the lengths to which he went before asserting the unlawful debt

claims are in sharp contrast to the cases where lawyers have been sanctioned based

on frivolous arguments that lack even an iota of legal support. *See, e.g.*, *O'Malley*

*v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) (upholding

sanctions where plaintiff "failed to allege *even one act* that could qualify as

racketeering activity under RICO"); *Charles v. Levitt*, 15 Civ. 9334 (PAE), 2016

WL 3982514, at *7 (S.D.N.Y. 2016), *aff'd and remanded*, 716 F. App'x 18 (2d

Cir. 2017) (imposing sanctions based on Plaintiff's "wild speculation" and

inclusion of "plainly irrelevant, absurd, and/or scurrilous statements"); *Dangerfield*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 02 Civ. 2561 (KMW) (GWG),

---

[4] The Opposition also argues that Mr. Weiss's unlawful debt claims "manifested a total lack of legal research and preparation" (Opp. at 21 (quoting *McLoughlin v. Altman*, 1995 WL 640770, at *2 (S.D.N.Y. Oct. 31, 1995))) but then devotes several pages to attacking the legal arguments that Mr. Weiss asserted at the district court. In *McLoughlin*, which the Opposition cites, the lawyer was sanctioned for, *inter alia*, filing an *ex parte* temporary restraining order in clear contravention of the Anti-Injunction Act (28 U.S.C. § 2283), "mak[ing] no effort" to contend with that obstacle, and failing to properly plead a single element of a RICO claim. 1995 WL 640770 at *2. This case – with the allegations in the Complaint, reliance upon legislative history, statutory analysis, and supporting cases – is markedly different.

2003 WL 22227956, at *9 (S.D.N.Y. Sept. 26, 2003) (imposing sanctions where lawyer did not "even bother[] to make an argument that the allegations in the complaint were supported by a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law").

Under these circumstances, the district court abused its discretion when it imposed sanctions based on the unlawful debt claims.

## III.

### MR. WEISS'S DISTINCTION BETWEEN HETER ISKA AND A SHTAR ISKO DID NOT VIOLATE RULE 11

The Benrimon Defendants argue that Mr. Weiss's allegations related to the Shtar Isko (which is always a writing, and sets out the obligations of the parties) and Heter Iska (which is a concept, and means "business dispensation") were factually and legally frivolous. This is wrong for several reasons.

*First*, the distinction between Heter Iska and a Shtar Isko is not legally frivolous. The Benrimon Defendants repeatedly argue that it is "settled law" that a Shtar Isko does not create a legally enforceable partnership. (Opp. at 25.) That is both incorrect and irrelevant. The Benrimon Defendants rely on a New York State trial court case and a smattering of cases from other jurisdictions. (*Id.*) None are controlling, and they actually support Mr. Weiss's argument about the distinction between Heter Iska and a Shtar Isko.

For example, in *Madison Park Inv'rs LLC v. 488-486 Lefferts LLC*, 2015

WL 471786, at *10 (Sup. Ct. N.Y. Cty. Feb. 5, 2015), the court discussed whether

a separate "Heter Iska agreement" superseded a note and mortgage that the parties

executed. The court concluded that it did not based on a reading of both

documents and the failure of the parties to fully execute the Heter Iska agreement.

*Id.* Remarking on the legal significance of a Heter Iska agreement, the court cited

to *Arnav Indus., Inc. Employee Retirement Trust v. Westside Realty Assocs.,* 180

A.D.2d 463, 464 (1st Dept. 1992). In *Arnav*, however, the court distinguished

between Heter Iska and a Shtar Iska, which the court suggested could be used as

evidence of a partnership. *See Arnav*, 180 A.D.2d at 464 ("In the instant matter,

there exists no separate Shtar Iska or partnership agreement which can be asserted

to vary the terms of the promissory note" which was made in accordance with

Heter Iska). The secondary sources cited in the Opposition similarly draw the

distinction between the concept of Heter Iska and a Shtar Iska agreement. *See* Jay

M. Zitter, *Application, Recognition, or Consideration of Jewish Law by Courts in

the United States*, 81 A.L.R. 6th 1, § 4 (2013) (defining separately Heter Iska and a

Shtar Iska contract); Daniel Klein, *The Islamic and Jewish Laws of Usury: A

Bridge to Commercial Growth and Peace in the Middle East*, 23 Denv. J. Int'l L.

& Pol'y 535, 543 (1995) (same). In other words, despite the Benrimon

Defendants' insistence that there is no legal difference between the notion of Heter

Iska and a Shtar Isko agreement (there is), Mr. Weiss was perfectly justified to make such an argument.

Second, Mr. Weiss had factual support for his allegation in the Complaint that the Benrimon Defendants concealed the Shtar Isko from the court and Mr. Chowaiki's victims in the Criminal Case when they chose to file only the Note and not the actual Shtar Isko contract. In their Opposition, the Benrimon Defendants incorrectly argue that the phrase "in accordance with Heter Iska" necessarily disclosed the existence of a Shtar Isko contract. (Opp. at 28.) Although the concept of Heter Iska generally refers to a business relationship other than a lender-borrower relationship, a reference to Heter Iska, standing alone, does not establish any other relationship, or anything else for that matter. On the other hand, a Shtar Iska is, by definition, a writing and sets out the terms of the relationship. Simply writing "in accordance with Heter Iska" does not put anyone on notice of the terms to which the parties agreed in the underlying document. *See Arnav Indus.*, 180 A.D.2d at 463. This is especially so where the Benrimon Defendants told the court that the Note (which stated it was "in accordance with Heter Iska") was a loan.

The terms of the Shtar Isko between Piedmont and Mr. Chowaiki bear this out. The Piedmont Loan (which was "in accordance with Heter Iska") was between Piedmont and Mr. Chowaiki's Gallery, while the Shtar Isko was between

Piedmont and Mr. Chowaiki personally. (A-145, ¶ 76.) Even crediting the Benrimon Defendants' argument, the implication of the phrase in the Note "in accordance with Heter Iska" suggests, at most, the possibility of the existence of a Shtar Isko between Piedmont and Mr. Chowaiki's gallery (the same parties as those on the Note). However, the parties to the Shtar Isko, which the Benrimon Defendants did not file with the court in the Criminal Case, are different, as is the consideration listed in each document. The Benrimon Defendants conspicuously do not address these issues in their Opposition or their decision to file only the Note in the Criminal Case but both the Note and the Shtar Isko in the Bankruptcy Case. The distinction between these two documents and their significance provided sufficient basis for Mr. Weiss to allege that the Benrimon Defendants concealed the Shtar Isko.

*Third*, Mr. Weiss's argument concerning the difference between Heter Iska and a Shtar Isko was properly preserved. Contrary to the Benrimon Defendants' argument, Mr. Weiss argued the significance of the Shtar Isko, as opposed to the reference to "Heter Iska" in the Note, in detail both during the pre-motion conference and also in his opposition to the Benrimon Defendants' motion to dismiss. (*See* A-178-179) ("What the Shtar Isko does represent, once it has been created, is that Chowaiki and Piedmont were 50/50 partners."); (A-366-367) ("It was irrelevant what the "Shtar Isko contract" is called . . . If Piedmont had not

intentionally omitted it, the Court would have known that Chowaiki and Piedmont were partners, not good-faith arms'-length negotiators.")  These arguments were more than sufficient to preserve the issue for appeal.  *See Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 671-72 (2d Cir. 1997).

*Finally*, the Benrimon Defendants' unsupported suggestion at the end of their Opposition that the Court remand the matter to the district court to increase the sanction is utterly meritless.  (Opp. at 29.)  The Benrimon Defendants never objected to the amount of the sanction and never cross-appealed.  It is well established that where a party does not cross-appeal, it cannot seek in its opposition brief to enlarge its rights under the district court's judgment.  *See Becker v. Poling Transp. Corp.*, 356 F.3d 381, 392 (2d Cir. 2004) ("in absence of cross-appeal, court may affirm on alternative grounds but may not enlarge judgment") (citing *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir. 1994)); *see also Jennings v. Stephens*, 574 U.S. 271, 276 (2015) ("an appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.") (quotations omitted).  The Benrimon Defendants' request is therefore contrary to binding Second Circuit precedent and should be denied.

## **CONCLUSION**

For the foregoing reasons, Appellant respectfully requests that this Court enter an Order: (i) reversing the district court's order, which held that Mr. Weiss violated Fed. R. Civ. P. 11 and directed him to pay the Benrimon Defendants $20,000; (ii) directing the Benrimon Defendants to repay the $20,000 that Mr. Weiss paid in connection with the district court's order, together with interest and costs; and (iii) granting such other and further relief as the Court deems proper.

Dated:  New York, New York
       June 14, 2021

FRANKFURT KURNIT KLEIN & SELZ, P.C.


By_____*/s/ Tyler Maulsby*_____
       Tyler Maulsby

28 Liberty Street, 35th Fl.
New York, NY 10005
Tel:  (212) 980-0120
Fax:  (347) 438-2152
tmaulsby@fkks.com

*Attorneys for Appellant Sidney Weiss*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 4,686 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated:  New York, New York
June 14, 2021

By:   */s/ Tyler Maulsby*
Tyler Maulsby